UNITED STATES DISTRICT COURT DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| DAVID WALSH | : | |
| 9919 Indian Queen Point | | |
| Fort Washington, Maryland 20744 | : | |
| Plaintiff | : | |
| | | |
| v. | : | **DKC 08 CV 1897** |
| | | Case No._____ |
| WILLIAM MITCHELL | : | |
| 23372 Hurry Road | | |
| Avenue, Maryland 20609 | : | |
| | | |
| DONNA MITCHELL | : | |
| 23372 Hurry Road | | |
| Avenue, Maryland 20609 | : | |
| | | |
| WILLIAM MITCHELL and DONNA MITCHELL | : | |
| d/b/a Xtreme Automotive Group | | |
| 10330 Theodore Green Blvd. | : | |
| White Plains, Maryland 20695 | | |
| | : | |
| DONNA MITCHELL | | |
| d/b/a Stat Auto Wholesales | | |
| 10330 Theodore Green Blvd. | : | |
| White Plains, Maryland 20695 | | |
| | | |
| JOHN JELICH AND JOHN DOE | : | |
| d/b/a THREESOME AUTO SALES | | |
| Rt 450 | : | |
| Crofton, Maryland 21114 | | |
| | | |
| Defendants. | : | |

## **COMPLAINT**

Violations of the Racketeer Influenced and Corrupt Organization ("RICO") Act, 18 U.S.C. § 1961 et seq., Breach of Contract, Trover and Conversion, Intentional Misrepresentation, Negligent Misrepresentation, Civil Conspiracy, Breach of Fiduciary Duty, and Assault and Battery.

Come now the Plaintiff David Walsh by and through his attorneys, Howard & Marcus, and Jeffrey E. Grell, Esq. and sues the Defendants, William Mitchell, Donna

Mitchell, William and Donna Mitchell d/b/a/ Xtreme Automotive Group, Donna Mitchell d/b/a Stat Auto Wholesalers their various business entities as may become known through discovery, John Jelich and John Doe d/b/a Threesome Auto Sales and in support here states:

## PARTIES

1.  Plaintiff David Walsh ("Walsh") is an individual residing at 9919 Queen Point, Fort Washington 20774.

2.  Defendant William Mitchell ("Mitchell") and Donna Mitchell ("Donna Mitchell") (collectively referred to herein as "the Mitchells") are husband and wife, who reside at 23372 Hurry Road, Avenue, Maryland 20695. The Mitchells owned and operated a business identified as Xtreme Automotive Group a/k/a Xtreme Auto Group Inc. ("Xtreme") located at 10330 Theodore Green Blvd., White Plains, Maryland 20695. No record exists to establish that Xtreme was at any time relevant hereto incorporated. Donna Mitchell owned and operated a business identified as Stat Auto Wholesalers ("Stat Wholesalers") located at 10330 Theodore Green Blvd., White Plains, Maryland 20695. William Mitchell owns and operates or represents that he owns and operates Mitchell Enterprises T/A Xtreme and T/A Stat with a business address of 23372 Hurry Road, Avenue, White Plains, Maryland.

3.  Upon information and belief Walsh states that Xtreme, Stat Wholesalers and Mitchell Enterprises are and have always been sole proprietorships owned by Mitchell and/or Donna Mitchell.

2

4. Xtreme and Stat Wholesalers held traders licenses in the State of Maryland through April 30, 2007. Stat was licensed as a wholesale car dealer in the State of Maryland.

5. Threesome Auto Sales ("Threesome") is a business operated by Defendant John Jelich ("Jelich") and John Doe which, as of May 28, 2008, was not licensed to sell automobiles in the State of Maryland either at wholesale or retail.

**NON-PARTIES**

6. Copart, Inc. (www.copart.com) is a national wholesale auction house headquartered in Fairfield, California. Only licensed auto dealers, such as Stat Wholesalers or Xtreme, may bid on and buy cars through Copart. Unlicensed persons or entities who wish to buy wholesale cars through Copart or other wholesale auctions commonly partner with or purchase through licensed auto dealers.

7. Prismus is a wholesale auto dealer through whom Walsh had previously purchased vehicles.

**NATURE OF THE ACTION**

8. Walsh extended the Mitchells both individually and in their business incarnations approximately $380,000 to acquire approximately 50 used motor vehicles. The oral contract between them provided that Walsh would select and fund the purchase of the vehicles and the Mitchells through their various business entities would facilitate the purchase, rehabilitate and the sale of the vehicles. The proceeds from the sale of the vehicles would be divided between Walsh and the Mitchells based upon a predetermined formula.

9. Jelich and John Doe owned and operated Threesome Auto Sales, a used car business located in Crofton, Maryland. One or more of the automobiles purchased by Walsh was sold, purchased and/or disposed of by Threesome, who knowingly failed and refused to compensate Walsh for the funds due to him under the Mitchell agreement.

10. The actions of the Mitchells and their various incarnations were deliberate, malicious, intentional and done seriatim for the purpose of defrauding Walsh. The Mitchells made significant and material misrepresentations which caused Walsh to purchase automobiles for which the Mitchells never intended to pay compensation. On one or more occasions William Mitchell threatened or otherwise assaulted Walsh when he attempted to secure the contract rights due him under the oral agreement.

## JURISDICTION

11. This action is brought under the federal Racketeer Influenced and Corrupt Organization ("RICO") statute, 18 U.S.C. § 1961 et seq., and various other Maryland common law doctrines. Jurisdiction is vested in this Court by virtue of 28 U.S.C. § 1331. Because claims brought under Maryland law are so related to Walsh's federal claims, over which the Court has original jurisdiction, that they form part of the same case or controversy under Article III of the United States Constitution, the Court also has jurisdiction over Walsh's Maryland common law claims pursuant to 28 U.S.C. § 1367. Venue is proper in this District.

## BACKGROUND OF DISPUTE

12. In the aftermath of Hurricane Katrina, a multitude of vehicle owners in the Gulf Area made claims against their auto insurance policies for car damage sustained during the hurricane. In settling these claims, it was not uncommon for a policyholder to

4

transfer title of an insured vehicle to their insurance company in exchange for policy benefits.

13. As a result of Hurricane Katrina, the wholesale auto market experienced a glut of used vehicles. Many of these vehicles sustained little or no actual damage in the hurricane and could be bought by knowledgeable buyers on the wholesale market, repaired for a modest investment, transferred to a geographic area with less supply of used cars, and sold for substantial profit.

14. Walsh decided to buy some of the Hurricane Katrina cars for his personal use and for the use of his family. In the beginning, Walsh did not perceive the used car market as an investment opportunity.

15. Walsh was not a licensed car dealer, which precluded him from buying used cars at auction houses – where the best deals were to be found. Walsh made contact with some car dealer acquaintances who agreed to submit auction bids on Walsh's behalf.

16. The Mitchells were one of the dealers used by Walsh to acquire used vehicles at auctions.

17. The Walsh / Mitchell partnership evolved from Walsh acquiring a few cars for his personal use to a business venture involving the acquisition of 51 cars between December 22, 2005 and June 8, 2006.

**Twenty-six Copart Vehicles**

18. Walsh purchased twenty-six vehicles at Copart auctions in Florida, Mississippi, and Louisiana. Walsh financed the acquisitions by wire transfers to Copart's Wells Fargo bank account in California under the Xtreme customer number (#102089), or Walsh wired funds directly into Mitchell's personal checking account .

19. Although Walsh personally financed the acquisition of these twenty-six vehicles, Copart transferred title to Stat Auto Wholesalers when it was the successful bidder on a car.

20. Twenty-two of the twenty-six vehicles were converted by the Mitchells and sold, without any of the sale proceeds being paid to Walsh. The most recent vehicle known to be sold by Mitchell was sold on November 23, 2007. The Mitchells, however, have not accounted for many of the 26 cars acquired by Walsh, and the cars have simply disappeared.

**Twenty-two Mitchell Vehicles**

21. Walsh purchased twenty-two vehicles directly from Mitchell.

22. Walsh financed these acquisitions by wire transfers into Mitchell's personal checking account or by charging Walsh's credit card; the titles were purportedly held by Mitchell, Xtreme or Stat Auto Wholesalers.

23. The Mitchells have not accounted for many of the 22 cars acquired by Walsh, and the cars have simply disappeared.

**Walsh Not Damaged by Five Vehicle Transactions**

24. Walsh also purchased five vehicles that he was able to retain possession of or regain possession of and sell for his own benefit (Vehicle Nos. 1, 19, 38, 42, and 50, *Exhibit A*, infra). Walsh was not damaged by these five transactions, and they are discussed herein only because Walsh seeks an order transferring title to some of these cars or simply to provide a complete description of the transactions involved.

**Agreements Between Walsh and the Mitchells**

6

25.  When the parties started doing business together, Walsh agreed to pay Mitchell $5000 for the use of Xtreme dealer license, password, and login at Copart. Under this agreement, Walsh financed all repairs, transportation, and other incidental costs but retained all profits for himself.

26.  Mitchell later presented Walsh with an opportunity to buy thirteen parts cars (Vehicle Nos. 6-18, *Exhibit A*, infra).  Walsh and Mitchell agreed to buy these cars on a 50/50 basis, i.e., Walsh and Mitchell would each contribute half the purchase price of the cars, and Walsh and Mitchell would evenly divide the profits.  Both Walsh and Mitchell were to contribute their own labor to repair the cars and both would be compensated for any labor and parts costs out of their share of the profits.  Both parties were to agree on the purchase and sale price of the vehicles.

27.  With regard to most of the vehicles, however, Walsh financed 100% of the purchase price.  Walsh agreed to split the profits on the sale of these vehicles with Mitchell if Mitchell helped transport, store, repair and sell the vehicles. Walsh was to approve the sale price of every vehicle.

28.  The Plaintiff incorporates herein Exhibit A attached hereto which lists by description, price and circumstances the vehicles which comprise the personal property which gives rise to his complaint.

## RACKETEERING ACTIVITY

**Mail & Wire Fraud**

29.  Pursuant to their scheme to defraud Walsh, the Mitchells could foresee and intended that the U.S. Postal Service, private or commercial interstate carriers, and interstate wires would be used "for the purpose of" advancing, furthering, executing,

7

concealing, conducting, participating in or carrying out the scheme, within the meaning of 18 U.S.C. §§ 1341 and 1343. In particular, the Mitchells could foresee that the U.S. Postal Service, private or commercial interstate carriers, and interstate wires would be used for the purpose of receiving and/or delivering, *inter alia*, payments for cars, titles, advertisements concerning cars and auctions, checks, invoices, vehicle inspection reports, insurance documents, internet websites, telephone calls and correspondence to conceal the Mitchells' fraud

30. The Mitchells acting singularly and in concert, personally or through their agents, as co-conspirators, or as aiders and abettors, used the U.S. Postal Service, private or commercial interstate carriers, and interstate wires or caused the U.S. Postal Service, private or commercial interstate carriers, or interstate wires to be used "for the purpose of" advancing, furthering, executing, concealing, conducting, participating in, or carrying out the schemes against Walsh, within the meaning of 18 U.S.C. §§ 1341 and 1343.

31. It is not possible for Walsh to plead with particularity all instances of mail and wire fraud that advanced, furthered, executed, and concealed the Mitchells' scheme to defraud because the particulars of many such communications are (or were) within the exclusive control and within the exclusive knowledge of the Mitchells or other presently unknown individuals.

32. The Mitchells personally, or by and through their agents, used or could reasonably foresee the use of the U.S. Postal Service or interstate wires or caused the U.S. Postal Service, private or commercial interstate carriers, or interstate wires to deliver each and every item of communication, among others, described with particularity as follows:

| TYPE | TO | FROM | DATED | MANNER THAT IT FACILITATED SCHEME |
|---|---|---|---|---|
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 12/22/05 | Payment for Vehicle No. 1 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 12/29/05 | Payment for Vehicle No. 2 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 1/12/06 | Payment for Vehicle No. 3 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 1/23/06 | Payment for Vehicle No. 3 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 1/26/06 | Payment for Vehicle No. 3 |
| Fax | Walsh | Mitchell/Xtreme | 2/21/06 | Mitchell faxed over 1/13/06 invoice to support $2,188.75 and $910 charges on Walsh's credit card. The contract for use of dealer's license was also faxed this same day. |
| Telephone Call | Walsh | Mitchell | 2/23/06-Thurs | Mitchell called from Threesome Auto while bidding on Vehicle #4 with Copart. (phone records can be pulled if needed as an exhibit) |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 2/27/06 | Payment for Vehicle No. 4 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 3/10/06 | Payment for Vehicle No. 5 |

9

| TYPE | TO | FROM | DATED | MANNER THAT IT FACILITATED SCHEME |
|------|-----|------|-------|----------------------------------|
| Telephone Call | Walsh | Mitchell | 3/11/06 | WM called and wanted to come over to the Walsh residence and discuss 13 cars that he had a great deal on and we needed to move quickly to purchase them. (Vehicle Nos. 6-18) |
| Fax | Walsh | Mitchell/Stat | 4/5/06 | Invoice faxed over for second batch of cars  (Vehicle Nos 20-26) |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 4/5/06 | Payment for Vehicle Nos 20-27 |
| Fax | Walsh | Mitchell | 4/6/06 | Mitchell faxed a listing of maximum bids for cars that were coming up on the next COPART auction. |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 4/6/06 | Payment for Vehicle Nos 27 & 28 |
| Call | Walsh | Mitchell | 4/8/06 | WM called saying he had a buyer for car #2 and number #3 for $75,000 |
| Call | Walsh | Mitchell | Week of 4/10/06-4/14/06 | Mitchell called from Threesome Auto and said he was on the phone with the potential buyers of Vehicles Nos. 2 and 3. |
| Wire Transfer | Mitchell's account in Maryland | Walsh's account in Maryland | 4/17/06 | Payment for Vehicle Nos. 29-32 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 4/21/06 | Payment for Vehicle Nos. 33 & 34 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 4/21/06 | Payment for Vehicle Nos. 33 & 34 |

| TYPE | TO | FROM | DATED | MANNER THAT IT FACILITATED SCHEME |
|---|---|---|---|---|
| Call | Walsh | Mitchell | 4/6/06 4/13/06 4/20/06 4/27/06 5/4/06 5/11/06 5/18/06 5/25/06 6/1/06 6/8/06 | Prior to every auction WM called and gave a list of cars, dollar limits and potential buyers. |
| Telephone Call | Walsh | Mitchell | 4/24/06 Mon | Mitchell called and said he had a great deal on Mercedes SL 500 Vehicle No. 36 for $5,000 and needed the money right away. He said he ran a check on the VIN and everything was okay. He said wanted cash and Donna would come over and pick it up and I said I would wire the money into his account. |
| Wire Transfer | Mitchell's' account in Maryland | Walsh's account in Maryland | 4/25/06 | Payment for Vehicle No. 36 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 4/28/06 | Payment for Vehicle Nos. 35, 37 & 38 |
| Telephone Call | Walsh | Mitchell | 5/1-2/06 | Mitchell called and said he had a great deal on Mercedes CL 500 Vehicle No. 39 for 22,000 and needed the money right away. He said he was transporting the car to auction for the seller and it had a clear title. He wanted cash and I said I would wire half the purchase price $11,000 into his account. |
| Wire Transfer | Mitchell's' account in Maryland | Walsh's account in Maryland | 5/3/06 | Payment for Vehicle No. 39 |

| TYPE | TO | FROM | DATED | MANNER THAT IT FACILITATED SCHEME |
|---|---|---|---|---|
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 5/5/06 | Payment for Vehicle No. 40 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 5/12/06 | Payment for Vehicle Nos. 41-43 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 6/5/06 | Payment for Vehicle Nos. 47-50 |
| Wire Transfer | Copart's corporate account in California | Walsh's account in Maryland | 6/8/06 | Payment for Vehicle No. 51 |
| Telephone Call | Mitchell | Walsh | 12/6/06 | Walsh confronted the Mitchells about Vehicle No. 3 being returned along with other questions. Mitchell threatened Walsh both physically and financially in addition, Mitchell addressed Walsh using racial profanity ("you white mf....") |
| Internet | Walsh | Mitchell | 1/13/07 1/16/07 1/27/07 | Mitchell and Donna Mitchell intentionally ran false ads for vehicles that were already sold. Vehicle Nos. 46, 51. Donna Mitchell twice authorized the false ads and payment. |
| Telephone Call | Walsh | Mitchell |  | Mitchell left threatening voicemail saying he knew people I wouldn't like and to come down to the shop and meet him. |
| Telephone Call | Walsh | Mitchell | 3/16/07 | Donna Mitchell called and left messages on voicemail about bad check and canceled meetings. |

| TYPE | TO | FROM | DATED | MANNER THAT IT FACILITATED SCHEME |
|------|-----|------|-------|-----------------------------------|
| Telephone Call | Walsh | Mitchell | | Amy Sims (Mitchell's relative and employee) called Walsh in an effort to lull Walsh into a sense that everything would work out. |
| Telephone Call | Walsh | Mitchell | 7/22/07 | William Mitchell called and said to come over and meet at his shop to review the settlement sheet. |

33. Each and every use of the U.S. Postal Service, private or commercial interstate carriers, or interstate wires described above was committed by the Mitchells with the specific intent to defraud Walsh and or for obtaining the money or property of Walsh by means of false or fraudulent pretenses, representations, or promises. The Mitchells' acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 constitute racketeering activity as defined by 18 U.S.C. § 1961(1) (B).

34. Walsh justifiably relied on the Mitchells' fraudulent representations and omissions made pursuant to the above-described scheme in that, among other things, Walsh purchased vehicles through the Mitchells' dealership, allowed the Mitchells to title cars in their personal names or the names of their dealership, and/or allowed the Mitchells to possess vehicles on the basis of the Mitchells' false representations.

**Interstate Transportation of Stolen Property**

35. Pursuant to their scheme to defraud Walsh, the Mitchells transported in interstate commerce property of Walsh (i.e., vehicles purchased by Walsh and transported in interstate commerce) which had a value of more than $5,000. The Mitchells knew the same to have been stolen, converted or taken by fraud in violation of 18 U.S.C. § 2314.

13

<u>COUNT I</u>
<u>RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT</u>
<u>18 U.S.C. § 1962(c)</u>
(Mitchell)

36.  The proceeding paragraphs are incorporated herein as though set forth in full.

37.  At all relevant times, Mitchell, Donna Mitchell, and John Jelich constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that within the meaning of 18 U.S.C. §§1961(4) and 1962(c), in that they are a group of individuals associated-in-fact..

   a.  Mitchell was an individual "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

   b.  Between December 2005 and November 2007, Mitchell conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

   c.  Mitchell's pattern of racketeering activity consisted of mail and wire fraud (paragraphs 29-34, *supra*, and elsewhere) and interstate transportation of stolen property (paragraph 35, *supra*, and elsewhere). These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

38.  In the alternative, Mitchell and Donna Mitchell an "enterprise," within the meaning of 18 U.S.C. §§1961(4) and 1962(c), in that they are a group of individuals associated-in-fact.

a. Mitchell was an individual "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

b. Between December 2005 and November 2007, Mitchell conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

c. Mitchell's pattern of racketeering activity consisted of mail and wire fraud (paragraphs 29-34, *supra*, and elsewhere) and interstate transportation of stolen property (paragraph 35, *supra*, and elsewhere). These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

39.  At all relevant times, the enterprises alleged above were engaged in, and their activities affected, interstate commerce and foreign commerce.

40.  All of the predicate acts above described were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Walsh, their common result was to defraud Walsh of money and vehicles; Mitchell participated, personally or through his agent or agents, directly or indirectly, in all of the acts and employed the same or similar methods of commission; Walsh was the victim of the acts of racketeering; or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

41.  All of the predicate acts described above were continuous so as to form a pattern of racketeering activity as Mitchell engaged in the predicate acts over a substantial period of time; or as such predicate acts have become Mitchell's regular way of conducting business.

42. As a direct and proximate result of, and by reason of, the activities of Mitchell, and his conduct in violation of 18 U.S.C. §§ 1962(c), Walsh has been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c) in an amount in excess of $75,000.

43. Walsh suffered damages to the extent he (among other things): (a) acquired vehicles that were never titled in his name; (b) did not receive the proceeds of sales of his vehicles; and (c) expended money and labor to repair vehicles without receiving the proceeds of any sales.

44. Walsh is entitled to recover against Donna Mitchell threefold his damages sustained; together with including costs, reasonable attorneys' fees and reasonable experts' fees.

## COUNT II
## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT
## 18 U.S.C. § 1962(c)
## (Donna Mitchell)

45. The proceeding paragraphs are incorporated herein as though set forth in full.

46. At all relevant times, Mitchell, Donna Mitchell, and John Jelich constituted an "enterprise," within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that within the meaning of 18 U.S.C. §§1961(4) and 1962(c), in that they are a group of individuals associated-in-fact..

　　a. Donna Mitchell was an individual "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

　　b. Between December 2005 and November 2007, Donna Mitchell conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

16

    c.  Donna Mitchell's pattern of racketeering activity consisted of mail and wire fraud (paragraphs 29-34, *supra*, and elsewhere) and interstate transportation of stolen property (paragraph 35, *supra*, and elsewhere). These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

47.  In the alternative, Mitchell and Donna Mitchell an "enterprise," within the meaning of 18 U.S.C. §§1961(4) and 1962(c), in that they are a group of individuals associated-in-fact.

    a.  Donna Mitchell was an individual "person," within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c), who associated with and/or participated in the conduct of said enterprise's affairs.

    b.  Between December 2005 and November 2007, Donna Mitchell conducted, participated in, engaged in, conspired to engage in, or aided and abetted, the conduct of the affairs of the enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) and 1962(c).

    c.  Donna Mitchell's pattern of racketeering activity consisted of mail and wire fraud (paragraphs 29-34, *supra*, and elsewhere) and interstate transportation of stolen property (paragraph 35, *supra*, and elsewhere). These acts all occurred after the effective date of RICO and more than two such acts occurred within ten years of one another.

48.  At all relevant times, the enterprises alleged above were engaged in, and their activities affected, interstate commerce and foreign commerce.

49.  All of the predicate acts above described were related so as to establish a pattern of racketeering activity, within the meaning of 18 U.S.C. § 1962(c), in that their common purpose was to defraud Walsh, their common result was to defraud Walsh of money and vehicles; Donna Mitchell participated, personally or through his agent or

17

agents, directly or indirectly, in all of the acts and employed the same or similar methods of commission; Walsh was the victim of the acts of racketeering; or the acts of racketeering were otherwise interrelated by distinguishing characteristics and were not isolated events.

50. All of the predicate acts described above were continuous so as to form a pattern of racketeering activity as Donna Mitchell engaged in the predicate acts over a substantial period of time; or as such predicate acts have become Donna Mitchell's regular way of conducting business.

51. As a direct and proximate result of, and by reason of, the activities of Donna Mitchell, and his conduct in violation of 18 U.S.C. §§ 1962(c), Walsh has been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c), in an amount in excess of $75,000.

52. Walsh suffered damages to the extent he (among other things): (a) acquired vehicles that were never titled in his name; (b) did not receive the proceeds of sales of his vehicles; and (c) expended money and labor to repair vehicles without receiving the proceeds of any sales.

53. Walsh is entitled to recover against Donna Mitchell threefold his damages sustained; together with including costs, reasonable attorneys' fees and reasonable experts' fees.

**COUNT III**
**RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT**
**18 U.S.C. § 1962(d)**
**(Donna Mitchell)**

54. The proceeding paragraphs are incorporated herein as though set forth in full.

55. In the alternative to Count II, Donna Mitchell conspired with Mitchell to conduct or participate, directly or indirectly, in the conduct of the affairs of the enterprises through a pattern of racketeering activity (*see supra* ¶¶ 168-174) in violation of 18 U.S.C. § 1962(d). In particular, Donna Mitchell intended to further an endeavor of

Mitchell which, if completed, would satisfy all of the elements of a substantive RICO criminal offense (18 U.S.C. § 1962(c)) and adopted the goal of furthering or facilitating the criminal endeavor.

56. Walsh was injured by Donna Mitchell's overt acts that are acts of racketeering or otherwise unlawful under the RICO statute, which included (among other acts) acts of mail and wire fraud and interstate transportation of stolen property (as described with particularity in paragraphs 29-35, *supra,* and elsewhere).

57. As a direct and proximate result of, and by reason of, the activities of Donna Mitchell's conduct in violation of 18 U.S.C. § 1962(d), Walsh has been injured in its business or property, within the meaning of 18 U.S.C. § 1964(c), in an amount in excess of $75,000.

58. Walsh suffered damages to the extent he (among other things): (a) acquired vehicles that were never titled in his name; (b) did not receive the proceeds of sales of his vehicles; and (c) expended money and labor to repair vehicles without receiving the proceeds of any sales.

59. Walsh is entitled to recover against Donna Mitchell threefold his damages sustained; together with including costs, reasonable attorneys' fees and reasonable experts' fees.

### COUNT IV
### TOVER AND CONVERSION

60. The preceding paragraphs are incorporated herein as though set forth in full.

61. The Mitchells agree to assist in the sale of certain motor vehicles paid for and owned by Walsh.

62. The Mitchells received and/or removed vehicles owned by Walsh.

63. Walsh demanded the return of his property or the alternate value of the property, but Mitchells refused Walsh's demands. The Michells' retention of the vehicles was intentional without justification and constituted conversion of Walsh's property.

WHEREFORE, Walsh demands judgment against the Mitchells for compensatory damages of $380,000.00 with interest and cost and such other relief as to this Court may deem proper.

## COUNT V
## INTENTIONAL MISREPRESENTATION

64. The preceding paragraphs are incorporated herein as though set for thin full.

65. The Mitchells individually and jointly represented to Walsh that they held a retail license to sell automobiles in the State of Maryland.

66. The Mitchells represented individually that they had extensive experience in the sale of high end of automobiles and would cooperate with Walsh and utilize their expertise in the sale of the vehicles acquired.

67. These statements (and others stated with specificity in *Exhibit A*) constituted false representation of a material fact by the Mitchells. The Mitchells knew that their representations were false when they made them to Walsh. The representations were made with the desire and intent of inducing Walsh to procure with his own money certain automobiles. The Mitchells representations were made for the purpose of defrauding Walsh. The Mitchells' representations were made with the intention of having Walsh act and rely upon them.

68. Walsh's actions of borrowing funds to acquire the automobiles were in reliance upon the Mitchells' statements and Walsh was justified in his reliance base upon the facts alleged by the Mitchells concerning their expertise in the sale of vehicles.

20

69. As a result of the intentional misrepresentation by the Mitchells' Walsh incurred damages.

WHEREFORE, Walsh demands judgment against the Mitchells for compensatory damages for $ 380,000.00 with interest and cost and such other relief to as this Court may deem proper.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

70. The preceding paragraphs are incorporated herein as though set forth in full.

71. The Mitchells individually and jointly represented to Walsh that they held a retail license to sell automobiles in the State of Maryland.

72. The Mitchells individually and jointly represented that they had extensive experience in the sale of high end of automobiles and would cooperate with Walsh and utilize their expertise in the sale of the vehicles acquired.

73. These statements (and other stated with specificity in Exhibit A) constituted false representation of a material fact by the Mitchells.   The Mitchells knew that their representations were false when they made them to Walsh.  The representations were made with the desire and intent of inducing Walsh to procure with his own money certain automobiles.  The Mitchells' representations were made for the purpose of defrauding Walsh.  The Mitchells' failed to exercise reasonable care and were otherwise negligent in making the representations. Walsh relied upon the representations.

74.  Walsh's actions of borrowing funds to acquire the automobiles were in reliance upon Mitchells' statements, and Walsh was justified in his reliance.

75. As a result of the negligent misrepresentations by the Mitchells, Walsh incurred damages.

WHEREFORE, Walsh demands judgment against the Mitchells for compensatory damages for $ 380, 000.00 with interest and cost and such other relief as this Court may deem proper.

## COUNT VII
## BREACH OF CONTRACT

76. The preceding paragraphs are incorporated herein as though set forth in full.

77. The Mitchells individually and jointly were engaged in the business of buying,

selling and repairing automobiles.

78. Walsh entered into a contract with the Mitchells by which the Mitchells purchased automobiles and automobile parts for resale in the retail and wholesale market.

79. Walsh funded the Mitchells' purchase of the automobile and automobile parts which were (contrary to the contract between the Mitchells' and Walsh) subsequently disposed of and/or exclusively utilized by the Mitchells without compensating Walsh.

80. Walsh demanded payment under the terms of the contract and the Mitchells refused and/or failed to pay the balance due thus materially breaching the contract with Walsh.

81. As a result of their breach Walsh incurred damages in the amount of $380, 000.00.

WHEREFORE, Walsh demands judgment against the Mitchells jointly and severally for $380, 000.00 with interest and cost and for such other relief as for Court may direct.

## COUNT VIII
## CIVIL CONSPIRACY

82. The preceding paragraphs are incorporated herein as though set forth in full.

83. Defendants William Mitchell, Donna Mitchell, John Jelich and John Doe entered into an agreement to wrongfully take and use automobiles and automobile parts purchased by Walsh.

84. Without the consent or approval of Walsh, on or about July 22, 2005 and thereafter Defendants unlawfully transferred, utilized and/or sold automobiles and automobile parts purchased by Walsh.

85. As a result of the Defendants' conspiracy to acquire and dispose of automobile and automobile parts, Walsh was damaged including severe economic injury, loss profits and other compensatory damages totaling more than $380, 00.00.

WHEREFORE Plaintiff demands judgment against the Defendants William Mitchell, Donna Mitchell, the Mitchells, John Jelich and John Doe jointly and severally for compensatory damages of $380,000.00 plus interest and costs.

## COUNT IX
## ASSAULT AND BATTERY

86. The preceding paragraphs are incorporated herein as though set forth in full.

87. Defendant William Mitchell did on the 22 day of May 2007 threatened and assaulted Walsh by ejecting him from the Mitchells' place of business. At all times relevant hereto Defendant William Mitchell acted with the intent and did do bodily harm to Walsh. Defendant William Mitchell's conduct was perpetuated with actual malice and caused Walsh to be put into reasonable apprehension for his life.

88.  At the same time and place aforesaid Defendant William Mitchell violently struck the Plaintiff.  Defendant William Mitchell's actions constituted an intentional touching which was of a non-consensual nature and was undertaken deliberately and which constitutes actual malice.

89.  As a result of Defendant William Mitchell's conduct, Walsh sustained substantial damages including but not limited to extreme pain and suffering, physical injuries including but not limited to back, neck, head and shoulders humiliation, mental distress and monetary losses.

WHEREFORE, Walsh demands judgment against Defendant William Mitchell of an amount in excess of $75,000.00 in compensatory damages and $100,00.00 punitive damages with interest and cost.

## PRAYER

Plaintiff David Walsh demands judgment from the Court as follows:

1.    To award damages against Defendants for a sum of money equal to the amount of damages and/or losses Walsh has sustained or will sustain;

2.    To treble the amount of said damages pursuant to 18 U.S.C. § 1964(c);

3.    To award prejudgment interest on the amount of damages and/or losses that Walsh has sustained;

4.    To award all costs of litigation incurred by Walsh, including its reasonable attorneys' fees, costs, disbursements and expenses, pursuant to 18 U.S.C. § 1964(c);

5.    To award punitive damages;

24

6.    And to award such other and further relief as the Court deems just

and equitable.

_____
William J. Howard, Esq.
Bar No. 25381
Howard & Marcus
4316 Hamilton Street
Hyattsville, MD 20781
(301) 864-6700