IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| DAVID WALSH, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 08 CV1897 DKC |
| | * | |
| WILLIAM MITCHELL, et al., | * | |
| | * | |
| Defendants. | * | |
| | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * ** * * * ** * * * * * * * * *

MEMORANDUM OF LAW IN SUPPORT OF
WILLIAM AND DONNA MITCHELL'S
PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

TABLE OF CONTENTS

I.      INTRODUCTORY STATEMENT ............................................................................ 1

II.     LEGAL STANDARD ........................................................................................... 2

III.    SUMMARY OF ALLEGED FACTS ..................................................................... 3

DISCUSSION ............................................................................................................... 6

IV.     COUNT I OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A CLAIM
        UNDER 18 U.S.C. § 1962(c) ....................................................................... 6

        a.      The "pattern of racketeering" component of RICO ensures that only
                extraordinary frauds of significant duration, scope, and impact are subjected
                to the enhanced penalties and provisions available under RICO .............................. 8

                i.      Walsh's reliance on 18 U.S.C. §§ 2312 and 2313 is misplaced, as he
                        fails to allege sufficient facts to establish the vehicles at issue in this
                        case were "stolen" within the meaning of the statute .................................... 11

                ii.     A scheme to defraud a single victim fails to state a claim sounding in
                        RICO and Walsh's attempts to bootstrap additional victims onto his
                        claim should not be countenanced by this Court .......................................... 14

                iii.    The scheme alleged by Walsh involves a single business transaction of
                        short duration .................................................................................... 18

        b.      Conclusion ................................................................................................ 21

V.      COUNT II OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A
        CLAIM UNDER 18 U.S.C. § 1962(d) ............................................................ 21

VI.    COUNT III OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A
       CLAIM FOR CONSPIRACY TO COMMIT TROVER OR CONVERSION
       BECAUSE WALSH NEVER OWNED, NOR HAD THE RIGHT TO POSSESS,
       THE VEHICLES AT ISSUE AND COUNT VI  IS MERE SURPLUSAGE THAT
       SHOULD BE DISMISSED ................................................................................ 22

       a.    Civil Conspiracy is not an independent tort and therefore COUNT VI should
             be dismissed ................................................................................................ 22

       b.    Count III should be dismissed because Walsh's Amended Complaint fails to
             establish any facts entitling him to immediate possession of the vehicles ................ 23

VII.   COUNT V OF THE COMPLAINT FAILS BECAUSE MARYLAND DOES NOT
       RECOGNIZE AN INDEPENDENT TORT OF BREACH OF FIDUCIARY DUTY ......... 25

VIII.  COUNTS IV AND V OF THE AMENDED COMPLAINT SHOULD BE
       DISMISSED AS TO DONNA MITCHELL BECAUSE WALSH FAILS TO
       ALLEGE ANY FACTS ESTABLISHING A CONTRACTUAL RELATIONSHIP
       BETWEEN HIMSELF AND DONNA MITCHELL OR ANY OTHER BASIS FOR
       THE IMPOSITION OF A FIDUCIARY DUTY UPON DONNA MITCHELL ................. 26

IX.    THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL
       JURISDICTION OVER THE STATE-LAW COUNTS OF THE COMPLAINT ............. 28

REQUEST FOR HEARING .................................................................................................... 28

CERTIFICATE OF SERVICE ............................................................................................... 29

## TABLE OF AUTHORITIES

STATUTES & RULES

18 U.S.C. § 1343 ....................................................................................................................... 6
18 U.S.C. § 1961 ....................................................................................................................... 8
18 U.S.C. § 1962 ................................................................................................................. 6, 20
18 U.S.C. § 2312 ................................................................................................................... 4, 5
18 U.S.C. § 2313 ................................................................................................................... 4, 5
18 U.S.C. § 2314 ..................................................................................................................... 11
18 U.S.C. § 2321 ....................................................................................................................... 5
28 U.S.C. § 1367 ..................................................................................................................... 26
Fed. R. Civ. P. 12 ................................................................................................................. 1, 2
Fed. R. Civ. P. 9 ................................................................................................................... 4, 6
Md. Code Ann., Corp. & Assn's. § 9A-101 .......................................................................... 25

CASES

*Al-Abood v. El-Shamari*, 217 F.3d 225 (4th Cir. 2000) ................................................. passim
*Alexander v. Evander*, 336 Md. 635 (1994) ......................................................................... 21

ii

*Alleco, Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.*, 340 Md. 176 (1995) ..................... 21
*Anderson v. Found. for Advancement, Educ. and Employ. of Am. Indians*, 155 F.3d 500 (4th Cir. 1998) ......................................................................................................................................................... passim
*Beck v. Prupis*, 529 U.S. 494 (2000) .................................................................................................. 20, 21
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................................................ 2
*BEP, Inc. v. Atkinson*, 174 F. Supp. 2d 400 (2001) .................................................................................. 25
*Brandenburg v. Seidel*, 859 F.2d 1179 (4th Cir. 1988) ..................................................................... 16, 17
*Bresnahan v. Bresnahan*, 115 Md. App. 226 (1997) ................................................................................ 24
*Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131 (2008) ........................................................... 20
*Damazo v. Wahby*, 259 Md. 627, 638, 270 A. 2d 814 (1970) ................................................................... 21
*Darcars Motors of Silver Spring v. Borzym*, 150 Md. App. 18 (2003) ....................................................... 22
*Daugherty v. Kessler*, 264 Md. 281 (1972) .............................................................................................. 21
*Davis v. Hudgins*, 896 F.Supp. 561 (E.D. Va. 1995) ................................................................................ 14
*De Sole v. United States*, 947 F.2d 1169 (4th Cir. 1991) ............................................................................ 2
*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000) ................................................ 20
*Eplus Tech. v. Aboud*, 313 F.3d 166 (4th Cir. 2002) ........................................................................... 13, 15
*Fed. Deposit Ins. Co. v. Kerr*, 637 F.Supp. 828 (W.D.S.C. 1986) ........................................................... 20
*First Capital Asset Magmt.*, Inc. v. Satinwood, Inc., 385 F.3d 159 (2d Cir. 2004) .................................. 17
*First Guar. Mortg. Corp. v. Procopio*, 217 F. Supp. 2d 633 (D. Md. 2002) ............................................... 4
*Flip Mortgage Corp. v. McElhone*, 841 F.2d 531 (4th Cir. 1988) ...................................................... passim
*Floyd v. Mayor of Baltimore*, 2009 Md. LEXIS 14 (February 19, 2009) ................................................. 12
*Froelich v. Erickson*, 96 F.Supp. 2d 507 (D. Md. 2000) ........................................................................... 22
*Garcia v. Foulger Pratt Develop., Inc.*, 155 Md. App. 634 (2003) ........................................................... 25
*GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543 (4th Cir. 2001) ................ 7, 18, 20
*Giannaris v. Cheng*, 219 F. Supp. 2d 687 (D. Md. 2002) .......................................................................... 4
*GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463 (2d Cir. 1995) ............................................. 18
*H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. at 239 (1989) ...................................................... passim
*Hall v. Virginia*, 385 F.3d 421 (4th Cir. 2004) .......................................................................................... 2
*Hartlove v. Maryland Sch. for the Blind*, 111 Md. App. 310 (1996) ........................................................ 24
*Hartz v. Friedman*, 919 F.2d 469 (7th Cir. 1990) .................................................................................... 18
*HMK Corp. v. Walsey*, 828 F.2d 1071 (4th Cir. 1987) .............................................................................. 7
*Howard Oaks, Inc. v. Maryland Nat's Bank*, 810 F. Supp. 674 (D.Md. 1993) ......................................... 19
*Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594 (3rd Cir. 1991) ............................................... 18
*In re American Honda Motor Co., Inc. Dealerships Relations Litigation*, 941 F.Supp. 528 (D.Md. 1996) ........................................................................................................................................... 20
*International Data Bank v. Zepkin*, 812 F.2d 149 (4th Cir. 1987) ........................................................... 13
*Int'l Brotherhood of Teamsters v. Willis Corroon Corp. of Maryland*, 369 Md. 724 (2002) ................. 24
*K & K Management, Inc. v. Lee*, 316 Md. 137 (1989) ............................................................................... 22
*Kahn v. Kahn*, 344 Md. 689 (1997) ......................................................................................................... 24
*Kerby v. Mortgage Funding Corp.*, 992 F. Supp. 787 (D. Md. 1998) ..................................................... 24
*Keys v. Chrysler Credit Corp.*, 303 Md. 397 (1985) ............................................................................... 22
*Kimball v. Harman*, 34 Md. 407 (1871) .................................................................................................. 21
*Larson v. Dawson*, 24 RI 317 (1902) ...................................................................................................... 22
*Lowry's Reports, Inc. v. Legg Mason, Inc.*, 186 F.Supp.2d 592 (D.Md. 2002) ....................................... 19

*Lust v. Burke*, 876 F. Supp. 1474 (D. Md. 1994)................................................................ 27

*Maryland Lumber Co. v. White*, 205 Md. 180 (1954) ...................................................... 22

*Menasco, Inc. v. Wasserman*, 886 F.2d 681 (4th Cir. 1989) ............................................. passim

*Morley v. Cohen*, 888 F.2d 1006 (4th Cir. 1989).............................................................18, 19

*Mylan Labratories, Inc. v. Akzo, N.V.*, 770 F. Supp. 1053 (D.Md. 1991) ............................. 2

*Palmetto State Medical Ctr. v. Operation Lifeline*, 117 F.3d 142 (4th Cir. 1997) ................. 6

*Papasan v. Allain*, 478 U.S. 265 (1986)............................................................................. 2

*Park v. Jack's Food Sys., Inc.* 907 F.Supp. 914 (D. Md. 1995) ....................................... 8, 18

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)..................................................... 16

*Roger Whitmore's Auto. Servs. v. Lake County, Ill*, 424 F.3d 659 (7th Cir. 2005) ............17, 18

*Salinas v. United States*, 522 U.S. 52, 62 (1997)............................................................... 20

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ......................................................... 8

*Shamberger v. Dessel*, 236 Md. 318 (1964)...................................................................... 21

*Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178 (2nd Cir. 2008)........................ 6

*Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.*, 190 F. Supp. 2d 785 (D. Md. 2002) ................................................................................................................... 24

*United Black Firefighters v. Hirst*, 604 F.2d 844 (4th Cir. 1979) ..................................... 2

*United States  v. Long Cove Seafood, Inc.*, 582 F.2d 159 (2d Cir. 1978) ............................ 11

*United States v. Aurora*, 860 F.Supp. 1091 (D. Md. 1994).............................................. 22

*United States v. Brandon*, 651 F.Supp. 323 (W.D.Va. 1987) ........................................... 11

*United States v. McClain*, 545 F.2d 988 (5th Cir. 1977).................................................. 11

*United States v. Portrait of Wally*, 105 F.Supp. 2d 288 (S.D.N.Y. 2000) ......................... 11

*United States v. Pryba*, 900 F.2d 748 (4th Cir. 1990)...................................................... 20

*United States v. Turley*, 352 U.S. 407 (1957)................................................................... 11

*Van Royen v. Lacey*, 262 Md. 94 (1971)........................................................................... 21

*Vaughn v. Vaughn*, 146 Md. App. 264 (2002) ................................................................. 22

*Vemco v. Camardella*, 23 F.3d 129 (6th Cir. 1994).......................................................... 18

*Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002) ................................................................. 2

*Vinogradova v. Suntrust Bank*, 162 Md. App. 495 (2005)................................................ 25

*Walk v. Baltimore & Ohio R.R..*, 890 F.2d 688 (4th Cir. 1989) .....................................18, 19

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS COMPLAINT

The Defendants, William and Donna Mitchell, by their undersigned counsel, have moved this Honorable Court for partial dismissal of the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons set forth below, this motion should be granted.

## I.     INTRODUCTORY STATEMENT

Plaintiff, David Walsh (Walsh), after reviewing Defendants Motion to Dismiss the Original Complaint, filed an Amended Complaint[1] in this action which, despite his best efforts, still fails to transform this ordinary, garden-variety business dispute into the more sinister, and lucrative civil RICO action he desires.  Notwithstanding Walsh's allegations, this case presents a simple business dispute between Walsh and William Mitchell that should be resolved on the basis of the underlying state law. Indeed, all but two of Walsh's claims sound under State law.  However, evidently believing that no business dispute is complete without invocation of RICO's extraordinary damages provisions, Walsh attempts to mire this simple case in allegations of criminal misconduct.

The core assertions within Walsh's Amended Complaint consist of alleged activity of limited duration, relating to a single victim, that may – if the his allegations were true – at most constitute simple action for breach of contract or unjust enrichment.  In apparent acknowledgement of the shortcomings of the original Complaint, Walsh has rewritten his complaint almost entirely, mostly by omitting key information, and has attempted to bolster his RICO claims through misplaced reliance on the existence of "other victims."  Walsh's attempt to bootstrap such sporadic and temporally remote conduct, without alleging how, if at all, it is related to the RICO organization or the acts at issue in the

---

[1] Notably, the Amended Complaint fails to incorporate by reference the allegations contained within the Original Complaint and, in fact, almost all of Walsh's claims and allegations have been stricken and replaced in the Amended Complaint with less factually enriched allegations.

Amended Complaint, renders such allegations meaningless to the relevant analysis.

Thus, although the Amended Complaint corrects some of the glaring defects, inconsistencies, and mistakes contained within the original Complaint, this Court should see Walsh's exaggerated pleading for what it is, a simple State-law business dispute mischaracterized as a federal criminal conspiracy. In sum, the RICO Counts should be dismissed by this Court and the remainder of the case should be remanded to State court for adjudication.

## II.   LEGAL STANDARD

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) serves to test the legal sufficiency of the complaint. *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). However, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), declared that the "plaintiff's obligation to provide grounds for his entitlement to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 555. Simply stated, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.*

Consequently, the Court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002). Accordingly, "a complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented." *Mylan Laboratories, Inc. v. Akzo, N.V.* 770 F. Supp. 1053, 1059 (D.Md. 1991) (Ramsey, J.).

Under the standard of review, Walsh's claims prove to be deficient. Accordingly, because Walsh failed to plead facts that would entitle him relief, this Court should grant the instant Motion.

## III.    SUMMARY OF ALLEGED FACTS

This case involves allegations that, at their core, concern the failure of an alleged business arrangement wherein Walsh and William Mitchell agreed to purchase, repair, and sell various vehicles that had been recovered in the aftermath of Hurricane Katrina. Am. Complaint at ¶¶ 9-10, 13. Walsh's injuries, he claims, stem from the two "partnership agreements" between himself and William Mitchell "for the purchase and resale of used vehicles." Am. Complaint at ¶13. Walsh asserts that the two agreements came to fruition on February 22, 2006, and March 10, 2006, respectively. Walsh, however, fails to describe the differing terms, purposes, or goals of the two apparently distinct agreements. *See id.*

As alleged, the agreements provided that the parties would purchase used vehicles damaged in Hurricane Katrina from Copart Auctions and that Mitchell would transport, store, repair, and then sell the vehicles to consumers, allowing the parties to split the profits. *Id.* Walsh states that, in effectuating this arrangement, he "finance[d] these vehicle acquisitions by, *inter alia*, wire transferring cash into Mitchell's personal checking account, wire transferring cash into Mitchell's Copart's business account (located in California), and/or by charging Walsh's credit card." Am. Complaint at ¶14. Notably, Walsh neither claims that he directly paid for any of the vehicles in his own name, nor does he claim that he acquired legal title to any of the vehicles. *See id.* Nevertheless, Walsh now asserts that Mitchell, and others, engaged in a criminal conspiracy to dispossess him of the vehicles acquired under Mitchell's Copart account or, alternatively, from the proceeds of the sale of such vehicles.

Rather than sue only for the breach of these alleged agreements, Walsh also asserts a single substantive RICO claim and accompanying RICO conspiracy. Walsh posits that the scheme giving rise

to his RICO claims began in January 2006 and, without citation to any specific factual support, that it continues through the present.  Am. Complaint at ¶4.  However, Walsh's claim that the misconduct is ongoing is belied by the limited nature of the scheme alleged, and his failure to allege any misconduct occurring after the business relationship ended.

In pressing his Civil RICO claim, Walsh relies almost exclusively[2] on allegations that Mitchell violated 18 U.S.C. §§ 2312 and 2313 by transporting and storing stolen vehicles.  Am. Complaint ¶¶18-22.  Walsh's implicit theory is that Mitchell, by falsely promising to split the profits on the sale of the vehicles, induced Walsh to enter into the partnership agreements for the purchase and resale of vehicles damaged in Hurricane Katrina.  According to Walsh, Mitchell never intended to follow through on the agreement, and therefore Mitchell had, "at all times relevant," intended to steal from Walsh.  Am. Complaint at ¶16; *see also* Am. Complaint at ¶22 ("Mitchell intended to steal these vehicles when he entered into the partnership agreements with Walsh and at all other relevant times.")

Walsh supports this allegation by claiming that he never received any profits[3] from the sale of the vehicles and that he likewise never acquired possession of the vehicles.  Am. Complaint at ¶20.  However, the Amended Complaint is notable for what is not alleged.  The Amended Complaint, for instance, does not allege that Walsh "owned," or otherwise enjoyed any legal right to possession for any of the vehicles.[4]  Indeed, Walsh neither claims that title to any of the vehicles was in his name, nor does

---

[2] Walsh also claims that Defendants committed wire fraud, in violation of 18 U.S.C. § 1343.  Am. Complaint ¶¶23-24.  In support, Walsh cites only Mitchell's alleged "intentional misrepresentations about the true nature of his business dealings with Walsh" as the basis for the wire fraud claims.  Am. Complaint at ¶23.  Such a bare allegation, however, falls well short of the requirements imposed under Fed. R. Civ. Proc. 9(b).  Walsh fails to allege the time, place, or contents of any alleged false statement or misrepresentation and, therefore, such allegations are incapable of supporting the RICO claim.  As such, Walsh's allegations of wire fraud should not be considered by this Court when analyzing the viability of the RICO claims.  *See Giannaris v. Cheng,* 219 F. Supp. 2d 687, 694 (D. Md. 2002)*; First Guar. Mortg. Corp. v. Procopio,* 217 F. Supp. 2d 633, 637 (D. Md. 2002).

[3] Walsh also fails to claim that any profits were received from any alleged sale of the vehicles.

[4] Walsh's only outright allegation that he owned the vehicles at issue is contained in ¶55, which is not incorporated within the allegations relevant to the Civil RICO action.

he claim that he paid for any of the vehicles directly. Likewise, Walsh never asserts the existence of a viable security interest in the vehicles, or any other facts that give rise to a legal right to possess the vehicles. Instead, Walsh simply states that he "purchased" the vehicles, although he concedes that the purchases were transacted by his payment of funds into Mitchell's checking account or Mitchell's Copart Account or by Mitchell's use of his credit card. *Compare* Am. Complaint at ¶15 ("Walsh purchased approximately 40 vehicles and then they were stolen and transported by Mitchell") and Am. Complaint at ¶13 (explaining the purchases were made by placing money in Mitchell's personal account, Mitchell's Copart account, or by credit card charges).

Additionally, in an effort to exaggerate the scope of the alleged criminal activity, Walsh desperately alleges two wholly unrelated incidents, which occurred almost a decade ago, in hopes of dressing his ordinary contract claim in RICO clothes. *See* Am. Complaint at ¶¶25-34. Specifically, Walsh asserts that in 1999 Mitchell victimized Geico Insurance when he attempted to illegally obtain possession of a stolen 1994 Gold Honda Accord by registering a falsified Mechanic's Lien on the vehicle in violation of 18 U.S.C. §§ 2312 and 2313. Am. Complaint at ¶¶26-29. Walsh does not, however, allege that Mitchell knew that the 1994 Gold Honda was stolen, which is an element of 18 U.S.C. §§ 2312 and 2313. Moreover, it is unreasonable to infer that Mitchell knew that vehicle to be stolen, as five years had passed from the time of the alleged theft (1994) to 1999, the date Walsh allegedly attempted to "illegally obtain possession of the vehicle." Am. Complaint at ¶26-29.

Walsh also claims that Mitchell and Amy Sims violated 18 U.S.C. §§ 2312, 2313, and 2321 in 2000 by allegedly replacing a VIN plate for a 2000 Chevrolet Malibu that had been stolen from Ourisman Chevrolet with the VIN plate from a salvage vehicle purchased from Jellich. Am. Complaint at ¶30. Walsh claims that Mitchell and Sims subsequently sold the vehicle to Victor and Becky

Monfridas.  Am. Complaint at ¶31.  Walsh, however, fails in tying the nearly 10-year-old conduct to the alleged misconduct in this case.

## DISCUSSION

### IV.    COUNT I OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(c).

Shifting tacks from the alleged wire fraud and mail fraud underlying the initial Complaint, Walsh now grounds his RICO claim against Mitchell almost exclusively on allegations that Mitchell participated in the interstate transportation and storage of stolen vehicles.  Am. Complaint ¶¶18-22, 35-42.[5]  Walsh's attempts to disguise this breach of contract action in a cloak of criminal wrongdoing, likely in hopes of receiving the benefit of the harsh penalties associated with RICO claims, are unavailing.  As explained below, Walsh's allegations of wrongdoing, even if true, fall below the standard required to sustain a civil RICO claim.

Generally, to establish a claim under RICO, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation of § 1962.  *See Palmetto State Medical Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2nd Cir. 2008).  In this case, to establish liability under § 1962(c), Walsh must allege (a) that Mitchell is employed by or associated with (b) an enterprise engaged in or affecting interstate or foreign commerce (c) and that Mitchell conducted or participated directly or indirectly (d) in the conduct of such enterprise's affairs (e) through a pattern of racketeering activity or the collection of unlawful debt.  *See* 18 U.S.C. § 1962(c).

However, RICO (and its attendant penalties) is reserved for only serious claims that fall outside the scope of normal business disputes because the conduct presents a continued threat to the public.

---

[5] Walsh also claims that Mitchell committed wire fraud in violation of 18 U.S.C. § 1343; however, the allegations contained within the Amended Complaint fail to satisfy the dictates of Fed. R. Civ. P. 9(b).  *See* N.2, *supra*.

"Congress contemplated that only a party engaging in widespread fraud would be subject to…" the serious consequences imposed by RICO.  *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989).  (internal citation omitted).  To avoid abuse by overeager plaintiffs, the Fourth Circuit takes a dim view of attempts to overinflate "garden-variety" business disputes into quasi-criminal RICO claims. *Flip Mortgage Corp. v. McElhone* explained:

> This circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims . . . A great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple instances of fraud, if one chose to do so.  But to adopt such a mischaracterization would transform every such dispute into a cause of action under RICO.

841 F.2d 531, 538 (4th Cir. 1988) (internal quotes and citations omitted).

Accordingly, allegations of fraudulent conduct alone cannot justify the imposition of RICO's treble damages liability: "RICO treatment is reserved for conduct 'whose scope and persistence pose a special threat to social well-being.'"  *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001) (quoting *Menasco*, 886 F.2d at 684).  Consequently, this Circuit holds that RICO claims must fall "sufficiently outside the heartland of fraud cases to warrant RICO treatment." *GE Investment*, 247 F.3d at 551 (quoting *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)); *see also Al-Abood*, 217 F.3d at 238 (courts must "preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity"); *Menasco*, 886 F.2d at 683; *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074 (4th Cir. 1987) (holding that RICO's heightened penalties "are reserved for schemes whose scope and persistence set them above the routine").

To protect defendants from overzealous plaintiffs, this Circuit and others place special emphasis on the plaintiff's ability to plead a pattern of racketeering.  The "pattern requirement … insure[s] that

RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted." *Menasco*, 886 F.2d at 683.

> a.    The **"pattern of racketeering" component of RICO ensures that only extraordinary frauds of significant duration, scope, and impact are subjected to the enhanced penalties and provisions available under RICO.**

This Circuit takes a strict view of the RICO pattern requirement, and often utilizes the requirement as the principal means by which to differentiate ordinary fraud cases from the wide-reaching frauds of a criminal nature that pose the threat to social well-being for which RICO liability is appropriate. *See e.g. Park v. Jack's Food Sys., Inc.*, 907 F.Supp. 914, 919 (D. Md. 1995) (describing the Fourth Circuit's "strict view."); *Menasco*, 886 F.2d at 683. Accordingly, the first step in evaluating a plaintiff's RICO claim requires that the court determine whether the facts, if assumed true, constitute a legally cognizable pattern of racketeering activity. *See Menasco, Inc.*, 886 F.2d at 683.

At a minimum, a "pattern of racketeering" requires evidence of at least two acts of racketeering activity, one of which occurred after the effective date of the statute, and the last of which having occurred within 10 years after the commission of the prior act of racketeering activity. *See* 18 U.S.C. § 1961(5). A pattern of racketeering activity is, therefore, comprised of a series of identifiable "predicate acts" that fall within the scope of 18 U.S.C. § 1961. However, "while two acts are necessary, they may not be sufficient." *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). Rather, a pattern of racketeering requires a showing that the predicate acts are (1) related and (2) that "they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). *Sedima* counseled that, in analyzing the pattern requirement, a court must examine the

relatedness and continuity of the alleged pattern of racketeering activities for "continuity plus relationship."

Acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id.* at 239-40. Indeed, *H.J. Inc.*, refined *Sedima*, explaining that predicate acts are "continuing" only if they constitute either an extended period of repeated conduct, or past conduct whose nature "projects into the future with a threat of repetition." *Id.*

"Continuity" is thus both a "closed-ended" and "open-ended" concept, referring either to a closed period of repeated conduct, or to past conduct that, by its nature, threatens repetition. *H.J. Inc.*, 492 U.S. at 241. Continuity, *H.J., Inc.*, opined:

> is in either case, centrally a temporal concept -- and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements.

*Id.* at 242. The Fourth Circuit has similarly explained:

> Continuity . . . refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of *repetition*." [*H.J., Inc.*, 492 U.S. at 242] (emphasis added). To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *Id.* at [240] (emphasis in original). Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at [242]. . . . Thus, predicate acts must be part of a prolonged criminal endeavor.

*Menasco*, 886 F.2d at 683-84.

Consequently, "a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* Predicate acts spanning only a short period fail to threaten the sort of threat of future criminal harm necessary to implicate the concerns Congress was concerned with when drafting RICO. When a RICO

claim lacks the long-term, substantial period of conduct required of "closed-ended continuity," however, a claim may nevertheless exist if the facts demonstrate a significant threat of continued criminal conduct. *Id.*

In evaluating the existence of a pattern of racketeering, added caution is often appropriate when, as here, the predicate acts comprising the alleged pattern primarily involve allegations of conduct that ordinarily occur in business transactions. This Circuit, for instance, expresses trepidation towards RICO claims founded upon claims of mail fraud or wire fraud, as most businesses regularly employ the mails. *See Al-Abood*, 217 F.3d at 238; *Anderson v. Found. for Advancement, Educ. and Employment of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998). The purpose behind the added caution is to avoid circumstances wherein ordinary business disputes become embroiled in RICO claims when the RICO claims arise from otherwise mundane business practices. Accordingly, the rationale underlying this Circuit's cautionary approach to RICO claims founded on allegations of mail and wire fraud should extend to allegations of interstate transportation of stolen automobiles when, as here, the underlying business arrangement was for the purchase and transportation of automobiles.

Accordingly, "[t]o determine if a fraudulent scheme rises to the level of a RICO violation," the Court must determine whether a pattern of racketeering exists by looking to the "scale, duration and number of victims" of the alleged scheme. *Al-Abood*, 327 F.3d at 238. In this case, when reviewing the various factors used to determine whether a claim falls "sufficiently outside the heartland" of State-law claims, it becomes clear that Walsh's Amended Complaint falls short in each area of inquiry. Walsh's allegations of wrongdoing, as included within the Amended Complaint, fail to establish the requisite threat of continued criminal conduct necessary to establish "open-ended" continuity and fall short of the long-term, substantial period of conduct required to establish "close-ended" continuity. In short, Walsh

has alleged an insufficient basis upon which to find the requisite pattern of racketeering activity.

      **i.**      **Walsh's reliance on 18 U.S.C. §§ 2312 and 2313 is misplaced, as he fails to allege sufficient facts to establish the vehicles at issue in this case were "stolen" within the meaning of the statute.**

Walsh's primary allegation of criminal wrongdoing in the Amended Complaint is that Mitchell committed 40 predicate acts involving the interstate transportation and storage of stolen vehicles in violation of 18 U.S.C. §§ 2312 and 2313. The statutes, which bar the interstate transportation of stolen vehicles, or storage of vehicles that had crossed an interstate boundary after being stolen, cover a wide range of criminal activity. The Supreme Court, in interpreting the term "stolen," has held that the statute includes "all felonious takings … with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Turley*, 352 U.S. 407, 417 (1957). Thus, the statute largely ignores any common law distinctions between larceny, embezzlement, false pretenses, and the distinctions between felonies and misdemeanors; however, the Federal statute cannot be interpreted in islolation, independent of the laws governing ownership and rights to possession.

Thus, although the scope of the term "stolen," is expansive, the statute is not without limit. "Even under the broad definition in *Turley*, stealing is still essentially an offense against another person's proprietary or possessory interests in property." *U.S. v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir. 1978) (reviewing meaning of term "stolen" under *Turley*); *accord U.S. v. Brandon*, 651 F.Supp. 323 (W.D.Va. 1987). Accordingly, while property may be stolen from another who lacks good title, e.g., a thief stealing from a thief, "the question whether a particular item is 'stolen' cannot be decided in a vacuum, without considering whether there has been some sort of interference with a property interest." *Id.*

Consequently, federal law generally controls the question of whether an item is "stolen," and local law controls the analytically prior issues of (a) whether any person or entity has a property interest in the item such that it can be stolen, and (b) whether the receiver of the item has a property interest it. *See U.S. v. Portrait of Wally*, 105 F.Supp. 2d 288 (S.D.N.Y. 2000). In *United States v. McClain*, 545 F.2d 988 (5th Cir. 1977), for example, the defendants were charged under 18 U.S.C. § 2314, a statute similar to that at issue here, for conspiring to transport and receive pre-Colombian artifacts from Mexico. *Id.* at 992. The conviction was reversed because the jury needed to determine when the artifacts in that case were exported. *Id.* at 1003-04. If the exportation occurred at a certain time frame, under Mexican law "it could not have been owned by the Mexican government, and illegal exportation would not, therefore, subject the receiver of the article to the strictures of the National Stolen Property Act." *Id.* at 1003.

In this case, Walsh's allegations fail to establish that the vehicles were "stolen" within the meaning of the applicable statutes, as the facts alleged fail to establish an ownership or possessory interest. Under Maryland law, the plain meaning of the word 'owner' is "'[o]ne who has the right to possess, use, and convey something.'" *Floyd v. Mayor of Baltimore*, 2009 Md. LEXIS 14 at *46 (February 19, 2009) (quoting in part Black's Law Dictionary 1136 (8th ed. 2004)). Paying money into Mitchell's accounts, which is all Walsh has alleged, is an insufficient basis upon which to find that he had a right to possess, use, or convey the vehicles at issue. Walsh does not claim that the vehicles were titled in his name, or in the name of any entity in which he held an interest. Walsh likewise does not claim that he held a security interest in the vehicles. Instead, Walsh simply claims that he purchased the vehicles, although he did so by placing money in Mitchell's account.

Indeed, under Walsh's theory, it is unclear as to what, if any, "ownership" or "property

interest," in the vehicles Walsh had at the time of the alleged "theft." Walsh never alleges that he acquired an ownership interest, or right to possession of the vehicles. Rather, Walsh "advanced" monies for the purchase of these vehicles to Mitchell, either by wiring money to Mitchell's bank account, Mitchell's Copart account, or by allowing Mitchell to charge his credit card. *See* Am. Complaint at ¶15. (stating Walsh "finance[d] these vehicle acquisitions by, *inter alia*, wire transferring cash **into Mitchell's personal checking account**, wire **transferring cash into Mitchell's Copart's business account** (located in California), and/or by charging Walsh's credit card.") (emphasis added).

Because Walsh contends that "Walsh intended to steal these vehicles when he entered into the partnership agreements with Walsh, and at all relevant times," it would appear that any theft was completed upon the first acquisition of Walsh's property. Thus, under Walsh's facts, what has been alleged is not the theft of vehicles, but rather the theft of Walsh's money, as a theft is complete at the time the thief obtains possession of the victim's property while harboring the requisite intent to deprive. If, as Walsh alleges, Mitchell obtained Walsh's money while harboring such an intent, the theft was complete at that point and not, as Walsh wishes to contend, after those funds were subsequently applied to the purchase of a vehicle. Given Walsh's failure to plead any other facts giving rise to a right to possession or ownership of the vehicles at issue, other than his alleged payment of sums into Mitchell's accounts, it would appear that his claims under 18 U.S.C. §§ 2312 and 2313 fail, as he has failed to establish the prerequisite legal interest in the property alleged to have been stolen.

However, even if Walsh's Amended Complaint states a claim for the "40," albeit unspecified, violations of 18 U.S.C. §§ 2312 and 2313, this Court should nevertheless find that no legally cognizable "pattern of racketeering exists, as the "number of predicate acts is not an appropriate litmus test, as the perpetration of numerous acts of mail and wire fraud[, or interstate transportation of stolen vehicles,]

'may be no indication of the requisite continuity of the underlying fraudulent scheme.'" *International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (quoting in part *Lipin Enterprises v. Lee*, 803 F.2d 322, 325 (7th Cir. 1986)).  Rather, the inquiry is whether the alleged predicate acts establish the necessary "relatedness" and "continuity" that separate widespread fraud threatening long-term criminal activity from the types of ordinary fraud or other business disputes generally not within the ambit of RICO.  *The Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp.2d 468, 476 (D. Md. 2002) (noting Fourth Circuit's emphasis that "the heightened civil penalties of RICO are reserved for schemes whose scope and persistence set them above the routine'") (quoting *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074) (4th Cir. 1987)).

> **ii.** **A scheme to defraud a single victim fails to state a claim sounding in RICO and Walsh's attempts to bootstrap additional victims onto his claim should not be countenanced by this Court.**

In considering the scope of an alleged RICO scheme, the Fourth Circuit previously explained that, although there is no *per se* rule, a scheme involving but one victim generally fails to implicate the concerns underlying Civil RICO.  *See Al-Abood*, 217 F.3d at 238-39; *Anderson*, 155 F.3d at 506 (holding that limited scheme to avoid paying compensation due under contract to single individual did not constitute a RICO violation); *Menasco*, 886 F.2d at 684-85 (holding that scheme to defraud only two victims did not constitute RICO violation but implying that claim alleging 27 victims of same scheme would suffice); *Flip Mortgage Corp.*, 841 F.2d at 538 (holding that fraudulent scheme occurring over several years but impacting only one victim did not constitute RICO violation).

In fact, when the scope or target of the alleged fraudulent scheme is sufficiently narrow, the Fourth Circuit expresses reluctance in finding a pattern of racketeering even if multiple victims are alleged.  *See International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (holding that a

single, limited fraudulent scheme, involving a misleading prospectus that went to ten investors, did not satisfy the RICO pattern requirement); *Eplus Tech. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002) (finding no pattern in fraudulent scheme and underlying conspiracy affecting "numerous creditors").

Initially, Walsh alleged the existence of only a single victim, himself.  In response to Defendant's Motion to Dismiss the Original Complaint, however, Walsh has attempted to bootstrap support for his RICO action by citing alleged criminal conduct occurring years prior to the conduct at issue here.  Am. Complaint at ¶¶ 25-34.  The additional RICO conduct that Walsh alleges, *viz.* the theft of a 1994 gold Honda and a 2000 Chevrolet Malibu, are unrelated acts, involving different purposes and victims, and as such they fail to meet the mandate that RICO predicate acts be "continuous and related" in order to constitute a pattern of racketeering activity.  *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Simply stated, the "the target of RICO is not sporadic activity." *Zepkin*, 812 F.2d at 154 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)).

In this case, Walsh's primary allegation is that Mitchell concocted a scheme involving the acquisition of vehicles damaged in Hurricane Katrina, which were to be repaired and sold for profit.  According to Walsh, the instant "scheme" allegedly began in January 2006, years after the other conduct.  Indeed, as to the 1999 theft of the 1994 Gold Honda Accord, there appears to be no allegation that Mitchell's actions were related in any meaningful way, aside from Mitchell's alleged personal involvement, to the RICO enterprise underlying the instant claim.  Additionally, the alleged acts of wrongdoing regarding Mitchell's alleged involvement with a scheme involving a 2000 Malibu likewise appear disconnected with the basis of the instant claim.  The lack of any "clear and distinct relationship" between the acts that Walsh alleges "defeats a component necessary for liability under RICO, specifically that the acts were related to one another and formed the basis of a pattern of racketeering

activity." *Davis v. Hudgins*, 896 F.Supp. 561, 568-69 (E.D. Va. 1995).

There is simply no information to connect the two prior incidents of alleged criminal wrongdoing to the alleged scheme to defraud Walsh. Moreover, a RICO pattern is not formed by sporadic activity, and temporal continuity is of primary importance. *See H.J. Inc.*, 492 U.S. at 239. Thus, Walsh's allegations of two singular events in 1999 and 2000, followed by approximately six years of no alleged wrongful activity fail to meet the "continuity plus relationship" elements needed for a pattern of racketeering activity. It is, of course, not the number of predicates that determined the validity of a pattern: it is the relationship that the acts bear to each other or to some external organizing principle that renders them ordered or arranged."

Certainly all three alleged schemes have a simple connection: they involve vehicles. One could parse out "relatedness" to the nth degree in an attempt to cobble together a connection between various distinct acts; however, as Justice Scalia warned,

> It hardly closes in on the target to know that "relatedness" refers to acts that are related by "purposes, results, participants, victims, . . . methods of commission, *or* [just in case that is not vague enough] *otherwise*." Is the fact that the victims of both predicate acts were women enough? Or that both acts had the purpose of enriching the defendant? Or that the different coparticipants of the defendant in both acts were his coemployees?

*H.J., Inc.*, 492 U.S. at 252 (J.Scalia, concurring). Thus, as the Fourth Circuit has noted, a conclusion that the pattern alleged is "the desire to obtain money or property by false or fraudulent pretenses is not enough to distinguish [the] claim from an ordinary fraud claim better prosecuted under state law." *Anderson*, 155 F.3d 500, 506 (4th Cir. 1998) (internal citation omitted).

Accordingly, the only scheme that Walsh is able to allege is with respect to the fraud that he insists he experienced himself. It is beyond cavil that the alleged acts of prior misconduct had nothing to do with the purchase and resale of vehicles damaged in Hurricane Katrina. Determining whether a

pattern of racketeering exists is a "commonsensical, fact-specific inquiry," *Eplus Technology, Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002). The Fourth Circuit prescribes certain factors to take into consideration: "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, the potential for multiple distinct injuries . . ." along with "all the facts and circumstances of the particular case – with special attention to the context in which the predicate acts occurred." *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996). A scheme this narrow (only one victim) combined with the "commonplace predicate acts" that directly relate to the business arrangement underlying the action, simply fails to implicate the concerns Congress intended to address with RICO. *See, e.g., Al-Abood*, 217 F.3d at 238 (because of limited number of victims and ordinary nature of fraud, court considered acts within scope of customary fraud, not RICO, despite fact that scheme lasted years and plaintiffs lost several million dollars); *Anderson*, 155 F.3d at 506 (failure to pay two real estate commissions and another related scheme did not bear enough relationship to each other to support civil RICO claim); *Anderson*, 155 F.3d at 506 (holding that limited scheme to avoid paying compensation due under contract to single individual did not constitute a RICO violation); *Menasco*, 886 F.2d at 684-85 (holding that scheme to defraud only two victims did not constitute RICO violation but implying that claim alleging 27 victims of same scheme would suffice); *Flip Mortgage Corp.*, 841 F.2d at 538 ) (holding that fraudulent scheme occurring over several years but impacting only one victim did not constitute RICO violation).

Here, Walsh's Amended Complaint alleges only a single victim of the racketeering activity, himself. The scheme alleged, moreover, has "a built-in ending point," as the scheme at issue terminated in this case when the business relations between Walsh and Mitchell ended. *See GE Investment*, 247

F.3d at 549.  Walsh's attempts to broaden the scope of a one-off contract dispute between himself and

Mitchell into a RICO claim are simply unavailing.  While Walsh may argue that the 1999 and 2000

events demonstrate that auto theft constitutes the "regular way" of doing business, or that the

racketeering may be ongoing, it is difficult to link the temporally remote conduct the enterprise alleged.

In fact, as to the 1999 events, Walsh alleges that only Mitchell was involved and fails to allege the

critical element of knowledge.  As to the 2000 event, it is clear that RICO was not intended to reach

sporadic criminal conduct and, as such, Walsh's reliance on conduct occurring six years prior to the first

Agreement between himself and Mitchell is of limited impact at best.

      Under the allegations in Walsh's Amended Complaint, it is clear that any alleged scheme was

sufficiently narrow in scope to avoid implicating the type of widespread social ills RICO claims serve to

correct.  The limited scheme alleged involved an agreement between Walsh and Mitchell to acquire,

repair, and resell vehicles damaged in Hurricane Katrina.  Walsh was, according to the allegations, the

only victim of that scheme.  Thus, while *Al-Abood* hesitated in creating a *per se* rule, the Court

nonetheless made clear that the existence of a single alleged victim weighs heavily against finding the

sort of "widespread fraud" required to establish a pattern of racketeering activity.  Quite simply, the

existence of a single victim, involved in a limited "scheme," fails to implicate the types of wide-reaching

fraud required to qualify as a pattern of racketeering.

        **iii.**        **The scheme alleged by Walsh involves a single business transaction of short**
                      **duration.**

      *H.J., Inc.*, *supra*, held that the requisite continuity for a pattern of racketeering in a close-ended

scheme may only be established by alleging "series of related predicates extending **over a substantial**

**period of time**."  492 U.S. at 242 (emphasis added).  Indeed, as *Roger Whitmore's Auto. Servs. v. Lake*

*County, Ill,* 424 F.3d 659, 673 (7th Cir. 2005), noted, "[p]erhaps the most important element of RICO

continuity is its temporal aspect." Accordingly, another relevant factor in determining whether a pattern of racketeering has been alleged is the timeframe during which the predicate acts are alleged to have taken place. It is the period of time during which the alleged predicate acts are committed that is relevant. *See Brandenburg*, 859 F.2d at 1185 (noting that a relevant inquiry is the "length of time over which they [the predicate acts] were committed.").

While there is no bright line rule for what constitutes a "substantial period of time" in the context of a civil RICO claim, *H.J., Inc.* explained that a period of a few weeks or months is too insubstantial to allow for invocation of RICO's penalties in the absence of any threat of future criminal conduct. *See H.J. Inc.*, 492 U.S. at 242. Indeed, in a close-ended scheme, such as the one alleged by Walsh, courts have been reticent to find a "pattern" when the alleged conduct occurred for a period of less than 24 months. *See First Capital Asset Magmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("while two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of closed-ended pattern"); *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995); *Hartz v. Friedman*, 919 F.2d 469, 474 (7th Cir. 1990) (finding 18 months not substantial); *Roger Whitmore's*, 424 F.3d at 673 (two years not substantial period). The Third Circuit held that twelve months is not "a substantial amount of time" while noting that cases which did find a substantial period of time dealt with conduct "lasting *years*, sometimes over a decade." *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3rd Cir. 1991) (emphasis in original); *accord Vemco v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (seventeen months not sufficient to constitute "long-term criminal conduct").

In this Circuit, schemes from seventeen months to as long as twelve years have been found not to constitute a pattern of racketeering activity. *See Parker*, 247 F.3d 543 (17 months); *Maryland-National*

*Capital Park & Planning Comm'n v. Boyle*, 203 F.Supp.2d 468 (D.Md. 2002) (18 months); *Park*, 907 F.Supp. at 919 (18 months); *Flip Mortgage Corp.*, 841 F.2d 531 (10 years); *Al-Abood*, 217 F.3d 225 (12 years); *c.f. Walk v. Baltimore & Ohio R.R.*, 890 F.2d 688, 689 (4th Cir. 1989) (recognizing that 10-year period of time is "substantial" in terms of continuity).  In *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001), a case involving two years of fraudulent conduct, the court explained that the plaintiff's complaint, "[did] not present the type of persistent, long-term fraudulent conduct that the court faced in *Morley [v. Cohen*, 888 F.2d 1006 (4th Cir. 1989)] or in other cases addressing closed-ended continuity."

In this case, the predicate acts occurred for a limited period of time – the period during which Walsh and Mitchell conducted business together.  While Walsh wishes to rely on the temporally remote allegations involving supposed criminal wrongdoing in 1999 and 2000, RICO was not intended to apply to sporadic criminal activity.  Additionally, while all of the allegations involve vehicles, they do not involve the relatedness RICO demands.  Walsh simply fails to allege facts demonstrating how the alleged misconduct, especially that alleged to have occurred in 1999 and 2000, are "interrelated by distinguishing characteristics and are not isolated events."  *See Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 505 (4th Cir. 1998)

Moreover, although Walsh claims Mitchell's RICO activity is ongoing, he offers no factual support for such a claim.  In fact, Walsh's bald allegation that the conduct is ongoing is contradicted by the dates regarding the specific instances of wrongdoing included in the initial Complaint, which Walsh has subsequently omitted from the Amended Complaint.  Consequently, the alleged acts of racketeering forming the basis of Walsh's Amended Complaint lack the "substantial time" requirement required for close-ended schemes such as the one alleged.  Thus, while the two-year period is not a bright line rule,

"it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where, as here, the alleged activity focused almost exclusively on one business arrangement with a single individual."

### b. Conclusion.

In summary, Plaintiff fails to allege a pattern of racketeering activity sufficient to sustain his RICO claims. In the words of Judge Smalkin, speaking in *Lowry's Reports, Inc. v. Legg Mason, Inc.*:

> Here, as in *Al-Abood* …, the scheme was narrowly focused, involving only one "target" (the plaintiff) and does not implicate any threat of organized criminal activity outside "the heartland of fraud cases" sufficient to justify handling under RICO. More to the point, just as in *Menasco, supra*, the defendants' alleged actions were directed toward a single fraudulent goal, involving only one limited purpose, only one perpetrator, and only one victim. This is no more than ordinary fraud; it is not RICO. *See Menasco*, 886 F.2d at 684-85; *see also Howard Oaks,* [810 F. Supp. 674]) (granting Rule 12(b)(6) dismissal of RICO claim). Finally, the durational element asserted in this case is insufficient, in light of the absence of other hallmarks of a valid RICO claim, to state a cause of action under recent Fourth Circuit law, especially *Al-Abood, supra*. Although it is true that, in *Walk v. Baltimore & Ohio R.R.*, 890 F.2d 688 (4th Cir. 1989), and *Morley v. Cohen*, 888 F.2d 1006 (4th Cir. 1989), the Fourth Circuit found that RICO claims had been stated both in closed-end schemes and open-end schemes … on account of what appears solely to have been the duration of the scheme, such a purely durational approach is overly simplistic and outdated, in view of recent Fourth Circuit case law, especially *Al-Abood*, which took a more substantive approach to the issue as a whole, focusing on what is - and what is not - within the heartland of a simple fraud, executed, as most are, with the aid of the mails and wires.

186 F.Supp.2d 592, at 593-94 (D.Md. 2002) (citations for previously cited cases shortened). "In short, this case alleges a simple fraud within the heartland of ordinary fraud cases, *i.e.*, no more than a scheme to cheat one" individual on the sales of various vehicles. *Id.* "Thus, on the basis of the most recent pronouncements out of Richmond taking a common-sense approach to the scope of RICO," this Court should dismiss Plaintiff's RICO claims.

## V.     COUNT II OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d).

18 U.S.C. § 1962(d) provides that, "It shall be unlawful for any person to conspire to violate any

of the provisions of subsection (a), (b), or (c) of this section." Thus, the elements of a claim under § 1962(d) are: (1) knowledge of the general nature of the conspiracy; (2) an agreement by the defendant (a) to personally commit a violation of sections 1962(a)-(c); (b) to aid or abet a violation; or (c) that another co-conspirator commit a violation; and (3) injury caused by an act in furtherance of the conspiracy. *In re American Honda Motor Co., Inc. Dealerships Relations Litigation,* 941 F.Supp. 528, 560 (D.Md. 1996) (*citing United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990)). General principles of conspiracy apply, and proof of an overt act is not required, *Salinas v. United States*, 522 U.S. 52, 62 (1997), however, allegations of conspiracy must be pled with particularity. *See Fed. Deposit Ins. Co. v. Kerr*, 637 F.Supp. 828, 834 (W.D.S.C. 1986).

An injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(d). *See Bridge v. Phoenix Bond & Indemnity Co.*, 128 S.Ct. 2131, 2140 (2008) (*quoting Beck v. Prupis*, 529 U.S. 494, 505 (2000)). As stated above, the acts alleged by Walsh do not constitute wrongful acts under RICO because the alleged acts do not qualify as predicate offenses. Moreover, because the Plaintiffs have not stated a claim under § 1964(c), or one of the other substantive provisions of RICO, then the conspiracy claim necessarily fails. *GE Investment*, 247 F.3d at 551 n.2 (*citing Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 21 (1st Cir. 2000)).

Therefore, the conspiracy count of the complaint should be dismissed.

## VI. COUNT III OF WALSH'S AMENDED COMPLAINT FAILS TO STATE A CLAIM FOR CONSPIRACY TO COMMIT TROVER OR CONVERSION BECAUSE WALSH NEVER OWNED, NOR HAD THE RIGHT TO POSSESS, THE VEHICLES AT ISSUE AND COUNT VI IS MERE SURPLUSAGE THAT SHOULD BE DISMISSED

### a. Civil Conspiracy is not an independent tort and therefore COUNT VI should be dismissed.

In Maryland, conspiracy, standing alone, is not actionable. *Van Royen v. Lacey*, 262 Md. 94, 97,

277 A.2d 13, 14 (1971).  Accordingly, "[i]n order for a civil action for conspiracy to be maintained, there must be, in addition to a confederation of two or more persons, (1) some unlawful act done in furtherance of the conspiracy, and (2) actual legal damage resulting to the victim-plaintiff."  *Id. at 98,* 277 A.2d at 14-15 (*citing Damazo v. Wahby*, 259 Md. 627, 638, 270 A. 2d 814 (1970) and *Kimball v. Harman*, 34 Md. 407, 409-410 (1871)).  Thus, a plaintiff may only bring a suit for civil conspiracy if he has been injured by an act that was itself tortious.  *See Beck v. Prupis*, 529 U.S. 494, 502 (2000).  In sum, Maryland law holds that a "civil conspiracy" is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiffs."  *Alleco, Inc. v. The Harry and Jeanette Weinberg Foundation, Inc.*, 340 Md. 176, 665 A.2d 1038 (1995); *Alexander v. Evander*, 336 Md. 635, n.8, 650 A.2d 260, 265, n.8 (1994).

Accordingly, only if the Defendants are liable for an underlying fraud or tort, may they be liable for civil conspiracy.  *See Daugherty v. Kessler*, 264 Md. 281, 286 A.2d 95 (1972) (explaining that damages for civil conspiracy are those that proximately result from the wrongful conduct).  Conversely, if Defendants are not liable for fraud or tort, then this count adds nothing and cannot provide a basis for recovery.  *See Shamberger v. Dessel*, 236 Md. 318, 204 A.2d 68 (1964) (noting that plaintiff cannot recover for civil conspiracy where damages cannot be recovered on account of the alleged tortious act itself.)

In Count III, Walsh alleges that Mitchell and others conspired to commit trover and/or conversion by depriving him of the vehicles purchased under his agreements with Walsh.  In Count VI, Walsh alleges the same facts, but under the title "civil conspiracy."  There can be no independent recovery for a civil conspiracy absent an underlying tort; therefore, the claims are redundant and Count VI should be dismissed.

**b. Count III should be dismissed because Walsh's Amended Complaint fails to establish any facts entitling him to immediate possession of the vehicles.**

To state a claim for conversion, a plaintiff must allege:

    (1)   the taking of personal property in possession of another;

    (2)   with intention to do so;

    (3)   without permission or justification;

    (4)   the exercise of dominion over the property;

    (5)   where the plaintiff has the immediate right to possession of the property; and

    (6)   harm done to the property.

*See Froelich v. Erickson*, 96 F.Supp. 2d 507, 526 (D. Md. 2000); *U.S. v. Aurora*, 860 F.Supp. 1091, 1097 (D. Md. 1994); *Keys v. Chrysler Credit Corp.*, 303 Md. 397 (1985). Maryland courts also stress that conversion is an intentional tort and therefore the element of intent to exercise dominion and control over the plaintiff's property must be pled. Failure to plead the intent element is fatal to a conversion claim. *Darcars Motors of Silver Spring v. Borzym*, 150 Md. App. 18, 818 A.2d 1159, 1172 (2003); *Vaughn v. Vaughn*, 146 Md. App. 264, 806 A.2d 787, 794 (2002).

However, it is also well settled that an action for conversion "is not maintainable for money unless there [is] an obligation on the part of the Defendant to return the *specific* money entrusted to his care." 69 Md. App. 476, 482, 518 A.2d 174 (1987) (emphasis added) (quoting *Larson v. Dawson*, 24 RI 317 (1902)).

In this case, Walsh alleges that he "owned" vehicles that the Mitchells agreed to sell on his behalf. Am. Complaint at ¶55. However, plaintiff's claim of "ownership" is a legal conclusion that fails to address the important element of conversion. The right to immediate possession, not ownership, is the crux of Walsh's claim. In this case, Walsh fails to allege facts giving rise to his right to immediate possession of the vehicles he believes to have been converted by Defendants. Although Walsh asserts that he "purchased" the vehicles, he did so by forwarding funds directly to either Mitchell's personal

checking account or Mitchell's Copart account.  *See* Am. Complaint at ¶14.  Thus, as explained in Section IV(a)(i) of this Motion, there are insufficient facts to establish Walsh's purported right to immediate possession of the vehicles, as he has failed to establish the prerequisite legal interest in the vehicles obtained.

Consequently, absent the necessary evidence establishing Walsh's right to immediate possession, his action for conversion and/or trover must fail.  Manifestly, absent an underlying action in tort, the civil conspiracy count premised upon allegations of conversion and/or trover, likewise, must also fail.

## VII.    COUNT V OF THE COMPLAINT FAILS BECAUSE MARYLAND DOES NOT RECOGNIZE AN INDEPENDENT TORT OF BREACH OF FIDUCIARY DUTY.

*Hartlove v. Maryland Sch. for the Blind,* 111 Md. App. 310, 681 A.2d 584 (1996), recognized, for the first time, an independent tort for breach of fiduciary duty under Maryland law.  However, the existence of the tort under Maryland law was short lived, as *Kahn v. Kahn*, 344 Md. 689, 690 A.2d 509 (1997), held the following year that, "there is no universal or omnibus tort for the redress of breach of fiduciary duty by any and all fiduciaries." *Id.* at 713, 690 A.2d at 521.  The existence, and breach, of a fiduciary duty is not, according to *Kahn*, a cause of action unto itself.  Rather, a plaintiff's ability to identify a breach of fiduciary duty begins counsel's analysis, as thereafter the complaint must "identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem." *Id.*  Consequently, an alleged breach of fiduciary duty is more appropriately considered a viable component of an action in contract or tort, and not as an independent cause of action sufficient to stand alone. *See Int'l Brotherhood of Teamsters v. Willis Corroon Corp. of Maryland,* 369 Md. 724, 727 n.1, 802 A.2d 1050, 1052 (2002), ("In *Kann* … we pointed out that, although the breach of fiduciary duty *may give rise to one or more causes of action, in tort or in contract,* Maryland does not recognize a separate tort action for breach of

fiduciary duty" (emphasis added)).

Since *Kann*, most courts have held that Maryland does not recognize an independent tort for breach of a fiduciary duty. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enterprises, Inc.,* 190 F. Supp. 2d 785, 801 (D. Md. 2002) (breach of fiduciary duty can be part of other causes of action, but no independent tort for breach of fiduciary duty, especially if alternative remedies available), *Kerby v. Mortgage Funding Corp.,* 992 F. Supp. 787, 803 (D. Md. 1998) (no universal tort of breach of fiduciary duty, at least where other remedies exist), *and Bresnahan v. Bresnahan,* 115 Md. App. 226, 235, 693 A.2d 1, 5 (1997) ("in light of *Kann,* it is doubtful that *Hartlove's,* creation of an independent tort of breach of fiduciary tort [sic] has survived") (dictum),; *Vinogradova v. Suntrust Bank*, 162 Md. App. 495, 509-10 875 A.2d 222 (2005) (holding that plaintiff's claim that independent action for breach of fiduciary duty was not completely eliminated by *Kahn* incorrect given the subsequent clarification offered by *IBT*); *but c.f. Garcia v. Foulger Pratt Develop., Inc.,* 155 Md. App. 634, 682, 845 A.2d 16, 44 (2003) (*Kann* means that whether there is a tort for breach of fiduciary duty must be determined on a case-by-case basis), *and BEP, Inc. v. Atkinson,* 174 F. Supp. 2d 400, 405-06 (2001) (plaintiff did state claim for breach of fiduciary duty because requirements set forth in *Kann* were satisfied).

Accordingly, this Honorable Court should dismiss Count V of the Amended Complaint, as Maryland does not recognize the independent action for breach of fiduciary duty alleged by Walsh.

## VIII.    COUNTS IV AND V OF THE AMENDED COMPLAINT SHOULD BE DISMISSED AS TO DONNA MITCHELL BECAUSE WALSH FAILS TO ALLEGE ANY FACTS ESTABLISHING A CONTRACTUAL RELATIONSHIP BETWEEN HIMSELF AND DONNA MITCHELL OR ANY OTHER BASIS FOR THE IMPOSITION OF A FIDUCIARY DUTY UPON DONNA MITCHELL.

In paragraphs 65 through 67 of the Amended Complaint, Walsh asserts an action for breach of fiduciary duty against Mitchell and Donna Mitchell. Walsh claims that the preceding paragraphs evince

the existence of a partnership, as defined under Maryland's Revised Uniform Partnership Act,[6] between the Mitchells (both William and Donna) and Walsh.  Am. Complaint at ¶65 ("As detailed above, the Mitchells and Walsh entered into a partnership for the sale of used cars").

However, Walsh's reference to the paragraphs "above," fails to elucidate any factual basis upon which to assert a contractual relationship between himself and Donna Mitchell, much less the existence of a partnership.  Indeed, in Paragraph 13 of the Amended Complaint, which Walsh apparently relies on in support of his claim, he alleges that "Mitchell," (meaning William Mitchell), "entered into two partnership agreements with Walsh."  Walsh does not allege that Donna Mitchell was a party to such agreements, or that she was intended to be a party to the agreements.  Donna Mitchell's name is not even mentioned.

In fact, the first time Walsh alleges that Donna Mitchell was a party to any agreement is in Paragraph 60, wherein he claims that the "Mitchells" (meaning Donna Mitchell and William Mitchell) entered into a contract; however, Paragraph 60 refers to the allegations in Paragraph 13 of the Amended Complaint in describing the contract.  As stated, Donna Mitchell was not a party to the partnership agreement (or contract) described in Paragraph 13, therefore, it is difficult to ascertain the basis for Walsh's contract claims against her.

Quite simply, Walsh fails to identify any basis to impute the existence of a fiduciary relationship between himself and Donna Mitchell, whether through the existence of any contractual agreement or partnership agreement with Donna Mitchell, and also fails to establish any other facts giving rise to a fiduciary relationship between himself and Donna Mitchell.  Accordingly, Counts IV and V should be dismissed as to Donna Mitchell.

---

[6] Maryland's Revised Uniform Partnership Act is codified under Md. Code Ann. Corp. & Assn's.  § 9A-101 *et seq.*

## IX.    THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW COUNTS OF THE COMPLAINT.

The sole basis for this Court's original jurisdiction over this matter are the federal RICO claims presented in Counts One and Two of the Amended Complaint.  The remaining counts against all defendants arise out of and are solely concerned with Maryland law.  Therefore, this Court's authority to hear the remaining counts arises from the supplemental jurisdiction afforded under 28 U.S.C. § 1367(a).

This Court may decline to exercise its supplemental jurisdiction over State-law claims if this Court "has dismissed all claims over which it has original jurisdiction."  Absent exceptional circumstances, this Court should remand this matter to State Court for final adjudication on the merits. *See Lust v. Burke*, 876 F. Supp. 1474, 1484 (D. Md. 1994) (Harvey, J.).

As explained above, this case involves allegations arising from a commonplace business dispute between two parties and, as such, it is best left to resolution by State courts.  There are no "exceptional circumstances" in this case and, accordingly, William Mitchell and Donna Mitchell respectfully submit that the remaining claims be remanded to State court for continued adjudication.

### REQUEST FOR HEARING

Defendants William and Donna Mitchell respectfully request that this Honorable Court grant a hearing on the instant Motion.

Respectfully submitted,

March 23, 2009

_____/s/_____
Byron L. Warnken (Bar No.: 23419)
James M. Nichols  (Bar No.: 28779)
Warnken LLC
300 East Joppa Road, Suite 303
Towson, MD 21286
443-921-1100
443-921-1111 (facsimile)

- 28 -

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 23rd day of March 2009, a copy of the foregoing Motion to Dismiss Plaintiff's Amended Complaint, with accompanying memorandum of law in support and proposed Order, were delivered by electronic means, and by first-class mail, to William J. Howard, Esquire, and by first-class mail, to Howard Foster, Esquire[7], Counsel for Plaintiff, David Walsh.

_____/s/_____
Byron L. Warnken

---

[7] On March 9, 2009, Mr. Foster recently informed this Firm that he had been appointed "lead counsel" on this matter and that he would be entering his appearance shortly.