UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| DAVID WALSH, | ) |
| | ) |
| Plaintiff, | ) Case No.: DKC-08-CV-1897 |
| | ) |
| v. | ) |
| | ) |
| WILLIAM MITCHELL, et al., | ) |
| | ) |
| Defendants. | ) |

**RESPONSE TO DEFENDANTS' PARTIAL MOTIONS TO DISMISS
PLAINTIFF'S FIRSTAMENDED COMPLAINT**

Plaintiff, David Walsh (hereafter "Walsh"), by undersigned counsel, hereby responds to Defendants' William and Donna Mitchell ("Mr. Mitchell," "Donna Mitchell" and "the Mitchells" respectively) and John Jelich's ("Jelich") Partial Motions To Dismiss Plaintiff's First Amended Complaint (hereafter "the Motions," "the FAC" or "the Complaint" respectively).[1] For the reasons stated herein, the Motions fail to meet their burden under Fed. R. Civ. P. 12(b)(6)[2] and should be denied.

**I.      INTRODUCTION**

The FAC alleges that William Mitchell, with the active assistance of several conspirators, including his wife, Donna Mitchell, deceived Walsh into spending over $300,000 to buy and resell used cars in 2006. Walsh purchased the cars, and then Mr. Mitchell stole and transported them across state lines. He never accounted for any of the proceeds of the sales of the cars. The

---

[1] Jelich's Motion is the same as the Mitchells', with only minor variations and different pagination. Therefore, for convenience, "the Motions at ___" will refer to the *page number* from the Mitchells' memorandum, but also refers to the arguments in Jelich's Motion as well (unless specified otherwise).
[2] References to the Federal Rules of Civil Procedure will be cited as "Rule _."

FAC refers to this as "the Scheme." FAC at ¶13. If that is all Walsh alleged, this case would not be brought under RICO and would rightly be heard in state court.[3] But the FAC alleges William Mitchell is a "career criminal" who has similarly scammed others out of their money and cars through similar misdeeds over the last decade. FAC at ¶¶ 25-34. He has served jail time for one such crime. Id. at ¶ 34. Thus, Mr. Mitchell is not an ordinary defrauder, and this is not an ordinary business dispute. Mitchell is bent on profiting from repeated criminal behavior, and as such, this is a prototypical civil RICO case where the imposition of treble damages is appropriate. Hence, the Motions' repeated citations (at 1-3, 10, 15-17) to RICO cases which have been dismissed because they amounted to nothing more than a single episode of fraud and involve only allegations of the relatively benign mail and wire fraud statutes, are inapplicable.[4] The FAC here alleges more serious allegations of interstate transportation of stolen vehicles. There is *no* RICO case holding that a pattern of these two federal statutes is "garden variety" fraud.

Hopefully, this case will do more than simply compensate Walsh for his considerable damages. It will put an end to Mr. Mitchell's career as a habitual and unrepentant thief.[5] "The object of civil RICO is not merely to compensate victims but to turn them into prosecutors, private attorneys general dedicated to eliminating racketeering activity." Rotella v. Wood, 528 U.S. 549, 557 (2000). And the Fourth Circuit has affirmed a civil RICO judgment by an investor

---

[3] RICO is an acronym for the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961-68. References to particular sections of statutes will be made as " § __" omitting Title 18 of the U.S. Code.

[4] *See, e.g.,* Al-Abood v. El Shamari, 217 F.3d 225, 238 (4th Cir. 2000) ("However, we are cautious about basing a RICO claim on predicate acts of mail and wire fraud because it will be the unusual fraud that does not enlist the mails and wires in its service at least twice. This caution is designed to preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity," holding that putative RICO claim in which "the main predicate acts" were mail and wire fraud did not satisfy the pattern requirement).

[5] Count II seeks damages from Mr. Mitchell and his co-conspirators. RICO's conspiracy provision, § 1962(d), makes conspirators vicariously liable "for the acts of each other." Salinas v. U.S., 522 U.S. 52, 63-64 (1997).

2

against a legitimate-appearing businessman hiding behind a legitimate-appearing business, just as Mr. Mitchell has allegedly done. Morley v. Cohen, 888 F.2d 1006, 1011 ("Morley made it clear that he would not have invested in either Mountainview or Newport Coal if he had known about Cohen's misrepresentations and concealments"); *see also,* EPlus Tech v. Aboud, 313 F.3d 166, 175 (4th Cir. 2002) (affirming civil RICO judgment against businesswoman who scammed a series of suppliers over several years even though her dealings with the plaintiff were short-term and the damages to it were under $300,000).

      **II.    THE FAC ALLEGES OVER 40 RACKETEERING ACTS COMMITTED BY THE DEFENDANTS**

In his FAC, Plaintiff alleges that Mr. Mitchell, along with his co-conspirators, stole and transported approximately 40 vehicles purchased by Walsh by depriving him of possession, use, and title to these cars, and by failing to return these vehicles and/or concealing their whereabouts. Walsh *also* alleges that Mr. Mitchell stole his financial interests in these cars by failing to pay the proceeds from their resale, pursuant to their partnership agreement. These are violations of 18 U.S.C. §§ 2312 and 2313, RICO predicate acts under §1961(1)(B).[6]

In their Motions, the Defendants do not dispute that these scenarios described above constitute "stolen" under §§2312 and 2313's "expansive" definition. Motions at 11. Consequently, the Defendants instead resort to the outrageous position that Walsh never owned or had a financial interest in these cars simply because the FAC does not specifically allege the words "ownership" or "legal right to possession." (And according to the Defendants, if Walsh did not "own" the cars, then they could not have been stolen from him in violation of §§2312 and

---

[6] 18 U.S.C. § 2312 states: "Whoever transports in interstate or foreign commerce a motor vehicle, vessel, or aircraft, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both." Section 2313 states, in relevant part: "Whoever receives, possesses, conceals, stores, barters, sells, or disposes of any motor vehicle, vessel, or aircraft, which has crossed a State or United States boundary after being stolen, knowing the same to have been stolen, shall be fined under this title or imprisoned not more than 10 years, or both."

3

2313). *See* Motions at 4 ("The [FAC], for instance, does not allege that Walsh 'owned,' or otherwise enjoyed any legal right to possession for any of the vehicles"); *see also* Id. at 12-13 ("Walsh never alleges that he acquired an ownership interest, or right to possession of the vehicles."). This overly hyper-technical reading of the FAC is wrong for a number of reasons and does not provide a valid basis to dismiss Walsh's complaint.

### A. Walsh Properly Alleges The Defendants Deprived Him Of His Ownership Rights and Benefits

First, the Defendants' argument ignores the plain language of the allegations in the FAC in which Walsh alleges that he purchased 40 cars and was deprived of their value, use, title, and proceeds. *See* FAC at ¶¶ 41, 52 (emphasis added):

> Walsh suffered damages to the extent he (among other things): (a) acquired vehicles that were never titled in his name; (b) did not receive the proceeds of sales of his vehicles; (c) expended money and labor to repair vehicles without receiving the proceeds of any sales; and (d) was deprived of the value and use of these vehicles.

Indeed, the Defendants specifically recognize that these enumerated rights and benefits (which Walsh alleges Defendants deprived him of) define "ownership." *See, e.g.,* Motions at 12 ("Under Maryland law, the plain meaning of the word 'owner' is [o]ne who has the right to possess, use, and convey something.") (citations and internal quotations omitted); Id. ("Walsh does not claim that the vehicles were titled in his name…").

Thus, by depriving him of these rights, the Defendants stole the cars "owned" by Walsh and violated §§ 2312 and 2313. *See, e.g.,* United States v. Turley, 352 U.S. 407, 417 (1957) ("'Stolen' as used in [§2312] includes all felonious takings of motor vehicles with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny."); United States v. Dillinger, 341 F.2d 696, 697-698 (4th Cir. 1965) (same). Walsh does not need to actually use the word "owned" in the FAC to satisfy Rule

8's liberal pleading requirements. *See* Chao v. Rivendell Woods, Inc., 415 F.3d 342, 348 (4th Cir. 2005) ("the pleading standard of the Federal Rules… is 'not onerous.' Rather, a complaint meets Rule 8's requirements if, in light of the nature of the action, the complaint sufficiently alleges each element of the cause of action so as to inform the opposing party of the claim and its general basis.").

### B. The Court Can Also Reasonably Infer That Walsh Owned The Cars

Second, Walsh alleges—repeatedly—that *he purchased* the cars at issue and that they were *his* cars. *See, e.g.*, FAC at ¶13 ("Pursuant to these partnership agreements, Walsh purchased used vehicles from Copart Auctions…"); Id. at ¶¶ 15, 47; *see also* Id. at ¶¶ 13-17 (alleging the cars were "Walsh's"); *see also* FAC at ¶ 20 (allegations that cars were concealed from Walsh and never returned to him). The Maryland Uniform Commercial Code, § 1-201(32) defines "purchase" to include: "*taking by sale*, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift, *or any other voluntary transaction creating an interest in property*." (emphasis added).[7]

Therefore, viewed in the light most favorable to Walsh, a court can reasonably infer from these allegations, as it should on a motion to dismiss, that Walsh actually owns these vehicles and/or has property interests in them.[8] *See, e.g.,* Qwest Communs. Corp. v. Maryland-National Capital Park & Planning Comm'n, 2009 U.S. Dist. LEXIS 12887, *4 (D. Md. 2009) ("No matter the standard used, the Court must consider all well-pled allegations in a complaint as true, and

---

[7] *See also* BALLENTINE'S LAW DICTIONARY (Lexis Law Publishing, 3d ed. 1969), defining "purchase" as: "To acquire title otherwise than by descent. To acquire title by the voluntary act of another…*To take as owner*, mortgagee, or pledgee. Including a taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, or any other voluntary *transaction creating an interest in property*." (citations omitted, emphasis added).

[8] To the extent that the Court finds that Plaintiff must specifically plead that he "owned" the vehicles, Walsh can easily file a Second Amended Complaint incorporating such minor changes. Any such ambiguity is not grounds for a dismissal under Rule 12b(6), but would be grounds for a more definite statement under Rule 12(e). *See* 2 MOORE'S FEDERAL PRACTICE, Civil § 12.34.

5

must construe factual allegations in the light most favorable to the plaintiff.") (citations omitted); 2 MOORE'S FEDERAL PRACTICE, Civil § 12.34 (Bender 3d ed.) ("For Rule 12(b)(6) purposes, the court must accept the plaintiff's factual allegations as true, drawing all reasonable inferences in plaintiff's favor. The court should construe a plaintiff's allegations liberally, because the rules require only general or 'notice' pleading, rather than detailed fact pleading.").

Moreover, Walsh also alleges that he paid for all the cars and that he was never reimbursed or compensated in any way. FAC ¶¶ 16, 20. Thus, for the Court to accept the Defendants' position that Walsh did not own these cars, it must conclude that *Mitchell* owned all 40 of them and that Walsh's payments were merely a $300,000 gift or loan. This interpretation is clearly unreasonable (and inconsistent with the allegations) and should be rejected.[9]

### C. Walsh Also Adequately Alleges That He Had A Financial Interest In The Cars Which Was Stolen

In the alternative, Walsh also properly alleged that he has a financial interest in the 40 cars. *See* FAC at ¶ 13-14 (allegations of a partnership agreement to purchase used cars and to split the profits). Therefore, at the very least, Walsh has the legal right and benefit of receiving the profit from the resale of the vehicles. Thus, the cars were also stolen from Walsh under §§2312 and 2313 because he was deprived of this financial interest (FAC at ¶¶14, 16). He need not have complete and total ownership of vehicles to state a claim here for stolen vehicles. *See, e.g.,* Turley, 352 U.S. at 417, *supra*[10]; United States v. Bunch, 542 F.2d 629, 630 (4th Cir. 1976) (intention to deprive bank of security interest in a car constitutes "stolen" under §§ 2312, 2313);

---

[9] Noticeably, the Defendants do not argue that *Mitchell* owned the cars, presumably because they know it would violate Rule 11 to do so. Thus, if Mitchell does not own them, Walsh does.

[10] 352 U.S. at 416-417 ("an automobile is no less 'stolen' because it is rented, transported interstate, and sold without the permission of the owner (embezzlement). The same is true where an automobile is purchased with a worthless check, transported interstate, and sold (false pretenses). Professional thieves resort to innumerable forms of theft and *Congress presumably sought to meet the need for federal action effectively rather than to leave loopholes for wholesale evasion.*") (emphasis added).

*accord* United States v. Hull, 437 F.2d 1, 4-5 (5th Cir. 1971) ("Dyer Act was **never intended** to incorporate or to **depend upon technical property concepts**. Instead it was broadly intended to deal with knowing interstate transportation following any unlawful taking…") (emphasis added); *accord* Schwab v. United States, 327 F.2d 11, 13 (8th Cir. 1964) ("[Turley's] language…does not say 'all' the rights and benefits of ownership and it does not say that there must be an intent to deprive the owner of those rights for all time…[T]he statute may be satisfied with something less than permanency and something less than a deprival of the totality of ownership.").

Additionally, the cars were also "stolen" when the Defendants exceeded the terms of the partnership agreement through their concealment of the cars' whereabouts (FAC at ¶¶20, 21); their personal use of the cars (Id. at 16); their failure to return to the cars to Walsh when demanded (Id. at ¶20-21); and their failure to split the profits (Id. at ¶ 14). *See* Dillinger, 341 F.2d at 698:

> The evidence here abundantly establishes Dillinger's intention when he transported the automobile from Jacksonville to Norfolk. His use of false representations in obtaining possession of the vehicle, his retention of it for many days beyond the day of its promised return, his abandonment of it at a place far distant from Jacksonville, and his failure ever to notify the lessor of the whereabouts of the vehicle, all combine to warrant the jury's finding beyond a reasonable doubt that, from the moment he leased the vehicle, he never intended its return..

*Accord* Tandberg-Hanssen v. United States, 284 F.2d 331, 332 (10th Cir. 1960) (temporarily exceeding terms of car rental agreement sufficient for conviction under §2312); *see also* United States v. Fields, 271 F. Supp. 277, 280-281 (D.S.C. 1967) ("it is unnecessary that the defendant's intention be to deprive the owner of the use of the vehicle forever. It is enough that he did not intend to return the automobile, but intended to use it for his own purposes as long as it served his convenience…").

### D. Defendants' Argument That Walsh's Money Was Stolen and Not His Cars Should Be Ignored

The Defendants also argue that if anything was stolen from Walsh, it was his "money" and not his vehicles. Motions at 13.[11] Their argument is that Mr. Mitchell stole Walsh's money and then used that money to legally purchase used vehicles to which Walsh had no legal right to possess or own. *See* Motions at 13. They cite no authority for this proposition. They also ignore the allegations that Walsh and the Mitchells formed a partnership for the purpose of reselling these used cars. FAC ¶¶13-15. Thus, at the very least, and as discussed above in Section II-C, Walsh held a financial interest in the cars through the partnership agreement, which was stolen.

The fact that Mr. Mitchell may have originally obtained possession of these cars from the auction sites through legal means is not a defense to the Dyer Act either. *See, e.g.,* United States v. Welborn, 322 F.2d 910, 912 (4th Cir. 1963) (The Dyer Act covers "both larceny by trick, where the intent to steal is present at the time of the rental, and embezzlement, where the intent to steal arises at some later time"); *accord* United States v. Mancuso, 423 F.2d 23, 28 (5th Cir. 1970) ("Although one may lawfully obtain possession of a vehicle, if all the circumstances surrounding its acquisition indicate that the defendant had the intent to retain unlawful possession, a jury may properly conclude that he had the requisite intent to steal the car."); *accord* Landwehr v. United States, 304 F.2d 217, 220 (8th Cir.1962) ("a felonious taking exists where the owner…was induced to part with his rights and benefits…by means of fraudulent representations…which the owner relied and without which fraudulent representations or false pretenses the owner would not have parted…"); *accord* Tandberg-Hanssen, 284 F.2d at 332 ("Even if the possession of the automobile in the first instance by the defendant is lawful, the offense is committed if the defendant forms an intent to deprive the owner of the rights and

---

[11] Indeed, Walsh also alleges that the Defendants stole money from him based on wire fraud. *See, e.g.,* FAC ¶ 40.

8

benefits of ownership, converts the automobile to his own use and thereafter transports it in interstate commerce"). Thus, these arguments should be rejected. Walsh properly alleges over 40 violations of §§ 2312 and 2313.

### III. THE FAC ALLEGES A PATTERN OF RACKETEERING ACTIVITY

"To establish a civil RICO case, the plaintiff must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Morley, 888 F.2d at 1009.[12] For all of its bluster about this being a "simple State-law business dispute mischaracterized as a federal criminal conspiracy," Motions at 2, 6, Defendants identify only one RICO pleading deficiency—the failure to allege a pattern of racketeering activity.[13] Id. at 8-10.

The concept of a "pattern of racketeering activity" is comprised of two separate elements, continuity (the length of time over which the racketeering was committed) and whether the racketeering acts are "related." As the Fourth Circuit has held:

> To establish such a pattern, a plaintiff must show that the racketeering predicates are *related* and that they amount to or pose a threat of *continued* criminal activity. In essence, the pattern requirement has been reduced to a continuity plus relationship test. As we have observed, there is no mechanical formula to assess whether the pattern requirement has been satisfied; it is a commonsensical, fact-specific inquiry.

EPlus, 313 F.3d at 181-82 (internal citations and quotations omitted). As discussed above in Section II, the FAC properly alleges over 40 separate RICO violations committed against Walsh: the theft and interstate transportation of approximately 40 vehicles he paid for in violation of

---

[12] Count I of the FAC (at p.7) alleges that William Mitchell committed many acts of racketeering activity (also referred to in the case law as "predicate acts") in violation of § 1962(c). RICO makes "indictable" violations of numerous enumerated federal statutes forms of "Racketeering activity." § 1961(1); EPlus, 313 F.3d at 181. Count II of the FAC (p.8) asserts all the Defendants conspired to commit a pattern of racketeering activity. This is a conspiracy to violate § 1962(c) of RICO, which is a violation of § 1962(d). FAC at ¶ 44. The other defendants are sued for conspiring with Mr. Mitchell to commit many of the same racketeering acts.

[13] RICO defines a "pattern of racketeering activity" of "at least two acts of racketeering activity…" during a ten year period. 18 U.S.C. § 1961(5); s*ee also*, EPlus, 313 F.3d at 181.

9

§§2312 and 2313.  FAC at ¶¶ 13-16, 20-22.[14]  Additionally, the FAC also alleges Mr. Mitchell used interstate wires in carrying out the Scheme.  Id. at ¶¶ 23-24.[15]  The Complaint also alleges Mitchell committed the same type of racketeering acts against others beginning ten years ago. FAC ¶¶ 25-34.

Thus, the issue is not whether the FAC alleges two or more acts of racketeering acts.  It plainly does. Rather, the Motions challenge the continuity (here ten years) and relatedness (here stealing and transporting cars) elements of pattern.  On its face, it would appear that ten years is an adequate length of time to constitute a pattern (since that is the outer limit).  And it also would seem that the repeated commission of the same crime over and over again would satisfy the "relatedness" aspect of the pattern test.  While the Motions assert otherwise, its truncated analysis of the pattern, focusing only on the period of time during which the racketeering acts were committed against Walsh, and not the other victims, is simply wrong and must be rejected.

### A. The Complaint Alleges A Long-Term Continuous Pattern of Racketeering

The Supreme Court and the Fourth Circuit hold that the concept of "continuity is established by showing predicate acts or offenses are parts of an ongoing entity's regular way of doing business."  Anderson v. Foundation for Advancement, 155 F.3d 500, 505 (4th Cir. 1998). And this is precisely what the FAC alleges here: that Mr. Mitchell has repeatedly transported

---

[14] The Complaint refers to this as "the Scheme."  FAC at ¶ 13.  The RICO violations are the interstate transportation of stolen vehicles, FAC at ¶18 and wire fraud, Id. at ¶ 23.

[15] While Rule 9(b) requires additional facts be pled to state fraud, which includes wire fraud, this heightened pleading requirement does not apply to the other RICO violations.  See, e.g., Williams v. Mohawk Indust., Inc., 314 F. Supp. 2d 1333, 1344 (N.D. Ga. 2004) ("The Court finds the Plaintiffs' reasoning persuasive, and finds that the better approach, and certainly the majority approach, is to apply the liberal pleading standards of Rule 8 to RICO actions involving non-fraud predicate activities"); cf., All v. Giant Food LLC, 2009 U.S. Dist. LEXIS 12618 at *13 (D. Md. 2009) ("Except in certain specified cases, a plaintiff's complaint need only satisfy the simplified pleading standard of Rule 8(a), which requires a short and plain statement of the claim showing that the pleader is entitled to relief").  The Motions do not even assert that this Court should subject the non-fraud allegations to the Rule 9(b) standard.

stolen vehicles victimizing Walsh and three others over a ten-year period.[16] This constitutes an ongoing, open pattern of racketeering activity which is Mr. Mitchell's regular way of doing business and threatens further harm to others. So held the Fourth Circuit in the most recent case examining the pattern concept. EPlus, 313 F.3d at 182-83 (concluding that the individual defendant's repeated "credit scams" defrauding several of her company's suppliers established a pattern).

Moreover, where the racketeer has a history of prior scams, it is not necessary for the predicate acts committed against the Plaintiff to constitute a pattern by themselves. Id. at 182 ("In any event, Aboud was involved in other credit scams, and we need not decide whether the MBT scheme, standing alone, would sufficiently establish a pattern of racketeering activity"). The Motion falsely states that the EPlus court concluded there was "no pattern in fraudulent scheme and underlying conspiracy affecting numerous creditors." Motions at 15 (*citing* Eplus at 182) (quotations omitted). The opinion states, "Simply put, the fact that the MBT scheme and its underlying conspiracy victimized numerous creditors *does not necessarily establish* the requisite pattern of racketeering activity. Id. (emphasis added). Thus, as stated, the EPlus court did not pass on whether the particular scheme victimizing the plaintiff, which lasted only "a few months," Id., met the pattern requirement.

The Motions also deceptively alter the quotation from International Data Bank v. Zepkin, 812 F.2d 149, 155 (4th Cir. 1987) by inserting the predicate act at issue in this case, interstate transportation of stolen vehicles, into the quotation on p. 13. The International Data Bank court held that the number of uses of mails and wires in a "fraudulent scheme" may not be important. It did not expand that holding beyond the mail and wire fraud predicate acts, which, as noted,

---

[16] The schemes against the others, Geico Insurance Co., Ourisman Chevrolet and the Monfridas, are detailed at ¶¶ 25-34 and involve the same co-conspirators.

*supra,* are viewed with caution. To reiterate, this case is almost exclusively based upon different predicate acts, the interstate transportation of stolen vehicles. There is *no authority* holding that the number of such predicate acts is not significant.

The district courts of this Circuit hold that racketeering activity injuring other victims, where those victims are specified, satisfies the pattern requirement. *See, e.g.,* Barefoot v. Sec. Credit Corp., 2008 U.S. Dist. LEXIS 92319 at *17 (E.D.N.C. 2008) (holding that plaintiff's allegation that the State of North Carolina "had similar problems with Defendants in the past…" alleged a pattern of racketeering activity); Southstar Funding, LLC v. Sprouse, 2007 U.S. Dist. LEXIS 22585 at *5-6 (W.D.N.C. 2007)(pattern found where the plaintiff was injured by "four real estate transactions occurring all on the same day" where there was evidence Defendant had defrauded 200 others over a two-year period). The Motions fail to cite a single case holding that no pattern exists where the plaintiff has identified other victims in other related schemes.

Additionally, the ten year period of racketeering activity satisfies the alternative, "closed" pattern requirement (which would apply if Mr. Mitchell's crimes were finished and he posed no future threat to anyone else). *See* Morley, 888 F.2d at 1006 (holding a ten year closed period of racketeering establishes a pattern); Walk v. Baltimore & O. R.R., 890 F.2d 688, 690 (4th Cir. 1989) (same); G.E. Inv. Private Placement II v. Parker, 247 F.3d 543, 551 (4th Cir. 2001) (reiterating the conclusion in Morley).

### B. The Motions' Contention that Predicate Acts Against Other Victims are Unrelated to Those Against Walsh is Wrong

The Motions argue, at considerable length and in a disorganized manner over numerous pages, that the FAC does not allege a pattern of racketeering activity because the racketeering acts Mr. Mitchell committed against Walsh are not related to those committed against the other victims. But this is simply wrong, as even the Motions acknowledge, the pattern requirement

*requires* analysis of the number of victims and not each in isolation. *See, e.g.,* Anderson, 155 F.3d at 505-06 ("The relationship criterion may be satisfied by showing that the criminal acts have the same or similar purposes, victims, or methods of commission, or are otherwise interrelated by distinguishing characteristics and are not isolated events") (quotation and citation omitted). The Fourth Circuit follows the interpretation of "pattern" enunciated by the Supreme Court in which it noted that RICO uses "terms and concepts of breadth." H.J., Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 237 (1989)(citation and quotations omitted). In reversing the rigid multiple-scheme requirement at issue in that case, the Court held that the allegation of numerous bribes over a six-year period "said to be related by a common purpose…" was sufficient to state a civil RICO claim. Id. at 250. And if repeated bribes to pubic officials over a six-year period satisfied the relatedness component of the pattern requirement, then surely many more instances of the transportation of stolen vehicles over a ten year period against multiple victims satisfies the relatedness test. For all of these crimes were animated by a common purpose as well, to steal from Mr. Mitchell's victims.

Therefore, the Motions' assertion, without citation to any authority, that the allegations of prior thefts from other victims "appear disconnected with the basis of the instant claim," Motions at 15, and "lack any clear and distinct relationship" with the other acts in the pattern, again without citation to any authority, are simply wrong. As stated, these prior crimes *were the same predicate acts* committed against Walsh. They have "similar purposes," "methods of commission" and also have a "common purpose," which are the hallmarks of the pattern requirement, which the Motions completely ignore. The Motions proceed to assert that six years between schemes is too long and somehow makes these predicates unrelated. Motions at 16.[17]

---

[17] The Motions makes much the same argument again at 18, contending that "it is difficult to link the temporally remote conduct [sic] the enterprise alleged." No authority is cited.

Again, this assertion is unsupported by any authority. And this is for good reason, as the argument is flatly inconsistent with the statutory definition of pattern, which allows a gap of up to ten years between predicates. § 1961(5). If this argument were accepted, then the ten year period between predicates would be effectively stricken from the statute.

Therefore, the argument that the FAC fails to allege related predicate acts is wrong, unsupported, and must be rejected.

### IV.  DEFENDANTS' CHALLENGE TO WALSH'S CONSPIRACY CLAIMS UNDER §1962(d) SHOULD SIMILARLY BE DENIED

Defendants contend that Walsh's RICO conspiracy claims under § 1962(d) should be dismissed because he fails to allege a claim under § 1962(c). *See* Motions at 21-22. This is the Defendants' only challenge to the §1962(d) claims. Thus, because Walsh properly alleges RICO predicate act violations (described above) and violations of §1962(c), this argument is without merit. Additionally, this argument is wrong as a matter of law. As the Supreme Court has held, a defendant can be convicted of a § 1962(d) violation and not the substantive §1962(c) violation. *See* Salinas v. United States, 522 U.S. 52, 64 (1997) ("A conspiracy may exist even if a conspirator does not agree to commit or facilitate each and every part of the substantive offense…If conspirators have a plan which calls for some conspirators to perpetrate the crime and others to provide support, the supporters are as guilty as the perpetrators.") (citations omitted). And if the offenses are different, then it does not follow that they must be pled similarly.

### V.  WALSH ADEQUATELY ALLEGES COUNTS III, IV, V, VI, and VII, HIS STATE LAW CLAIMS

The Motions also seeks dismissal of Counts III (Trover and Conversion), IV (Breach of Contract Against Donna Mitchell), V (Breach of Fiduciary Duty Against the Mitchells), VI

(Civil Conspiracy), and Count VII (Unjust Enrichment). For the reasons stated below, the Motions should be denied with respect to these counts.

### A. Walsh Adequately Alleges Conversion (Count III)[18]

The Defendants' argument with respect to dismissing Walsh's conversion claims is confusing and not entirely clear. Seemingly, they contend that Walsh does not properly allege conversion because: 1) he only alleges that he "owned" the cars but does not allege "immediate right to possession"; and 2) he does not allege the requisite "intent." Motions at 24. Despite the Defendants' attempt to obfuscate the facts regarding this rather simple state law tort, Walsh properly alleges a claim for conversion.

The cases cited by the Defendants define conversion as: "(1) plaintiff's right to possess the property; and (2) defendant's intentional taking of the property without authority or permission." Froelich v. Erickson, 96 F.Supp. 2d 507, 526 (D. Md. 2000) (*cited* at Motions at 24).[19] This is exactly what Walsh pleads. FAC at ¶57 ("Walsh demanded the return of his property or the alternate value of the property, but the Mitchells refused Walsh's demands. The Defendants' retention of the vehicles was intentional, without justification…"). Walsh also refers to previous paragraphs in FAC, where he alleges that he purchased the cars at issue; that the Defendants concealed and refused to produce these cars when demanded; and that the Defendants refused to produce the titles to these cars. *See* Section II, *supra*.[20] Thus, walsh states a claim here.

---

[18] Defendants do not challenge Walsh's trover claims.
[19] *See also* United States v. Arora, 860 F. Supp. 1091, 1097 (D. Md. 1994) ("A 'conversion'…has been defined as: An intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel."). This is what Walsh alleges.
[20] The FAC at ¶ 56 specifically alleges that Walsh "owns" the cars at issue. According to the Defendants, alleging "ownership" is now no longer sufficient, despite their attempt to dismiss the §§ 2312 and 2313 RICO predicate acts for failure to allege "ownership." The Defendants attempt—once again—to draw

### B. Walsh's Claim for Civil Conspiracy (Count VI) Is Proper Because He Alleged Underlying Torts

The Defendants contend that Walsh's claim for civil conspiracy requires an underlying tort and absent a properly pled claim for trover and conversion, Count VI must fail. Motions at 23. This is their only argument with respect to this Count. Thus, because Walsh properly pled trover and conversion (as discussed above), this argument should be rejected.

### C. Walsh Properly Alleges Breach of Contract and Breach of Fiduciary Duty Against Donna Mitchell (Counts IV and V)

The Defendants argue that Count IV and V (breach of contract and breach of fiduciary duty) should be dismissed against Donna Mitchell because there are no allegations that Donna Mitchell was a party to the contract. *See* Motions at 26-27. This is plainly wrong.

As the Defendants concede, ¶ 60 plainly states that "Walsh entered into a contract with the Mitchells..." Thus, the only basis for the Defendants' argument here is that ¶ 13 (which is referenced in ¶ 60) lists only Mr. Mitchell as a contracting party. But, there is no indication in ¶ 13 that Mr. Mitchell is the *only* party to the contract. And ¶ 13 was referenced in ¶ 60 specifically to identify that Donna Mitchell was *also* a party to that very same agreement.

Moreover, as discussed above, during a motion to dismiss, all reasonable inferences should be drawn in Walsh's favor. The Court can reasonably infer that Donna Mitchell was a party to the partnership agreement between Walsh and Mr. Mitchell and therefore she had a

---

some esoteric distinction between the words "own," "right to possess," and "purchase," etc. But, under any changing and self-serving definition the Defendants can come up with, Walsh has alleged the necessary elements under the Federal Rules' liberal pleading standards. To the extent that the Court finds that Plaintiff must specifically plead that he had the "right to immediate possession," Walsh can easily file a Second Amended Complaint incorporating such minor changes. This is not grounds for dismissal.

fiduciary duty to Walsh under the Maryland Revised Uniform Partnership Act ("RUPA").[21]

Defendants cite no authority to the contrary.

### D. Maryland Recognizes A Claim for Breach of Fiduciary Duty (Count V)[22]

The Defendants seek to dismiss Walsh's claim for breach of fiduciary duty because they contend that Maryland does not recognize such a cause of action. *See* Motions at 25-26 (*citing* Kann v. Kann, 344 Md. 689 (Md. 1997)). This is wrong. *See, e.g.,* Insurance Co. of North America v. Miller, 362 Md. 361, 379 (Md. 2001) (*citing* Kann):

> [Kann] does not mean that there is no claim or cause of action available for breach of fiduciary duty. Our holding means that identifying a breach of fiduciary duty will be the beginning of the analysis, and not its conclusion. Counsel are required to identify the particular fiduciary relationship involved, identify how it was breached, consider the remedies available, and select those remedies appropriate to the client's problem.

Garcia v. Foulger Pratt Development, Inc., 155 Md.App. 634, 682-683 (Md.App. 2003) (holding that Kann does not stand for proposition that breach of fiduciary duty is not a viable claim).

Here, Walsh specifically identifies: 1) a fiduciary duty between the Mitchells and Walsh based on their partnership agreement, grounded in RUPA (FAC at ¶ 65)[23]; 2) the duty was violated when the Mitchells stole/concealed the cars and failed to compensate Walsh (Id. at ¶66);

---

[21] Again, to the extent that Court finds these allegations ambiguous, Walsh can easily file a Second Amended Complaint clearly stating that both Mitchells were a party to the partnership agreement.
[22] Jelich does not specifically challenge this Count.
[23] *See* RUPA, § 9A-404 (b)-(d), which states, in pertinent part:

> (b) A partner's duty of loyalty to the partnership and the other partners is limited to the following: (1) To account to the partnership and hold as trustee for it any property, profit, or benefit derived by the partner in the conduct and winding up of the partnership business or derived from a use by the partner of partnership property, including the appropriation of a partnership opportunity;
>
> (c) A partner's duty of care to the partnership and the other partners in the conduct and winding up of the partnership business is limited to refraining from engaging in grossly negligent or reckless conduct, intentional misconduct, or a knowing violation of law.
>
> (d) A partner shall discharge the duties to the partnership and the other partners under this title or under the partnership agreement and exercise any rights consistently with the obligation of good faith and fair dealing.

and 3) Walsh seeks a remedy of accounting, reimbursement, and a constructive trust (Id. at ¶ 67). Therefore, Walsh properly alleges a claim for breach of fiduciary duty against the Mitchells.

### E. Walsh Properly Alleges a Claim For Unjust Enrichment (Count VII)

Lastly, Jelich argues that Walsh fails to state a claim for unjust enrichment because he does not allege that he [Walsh] has "any legal interest in the vehicles in which [the defendants] allegedly used for 'their own personal use without compensat[ion].'" Jelich's Motion at 23. This is the same recycled argument Defendants have made throughout their Motions with respect to "ownership." Walsh need not reargue these same points, and instead, he refers to the above discussions regarding his ownership and legal/proprty interest in the vehicles at issue. For these reasons, Jelich's argument here fails. (There are no other arguments made regarding the unjust enrichment claims).

### VI. CONCLUSION

For the reasons stated herein, the Defendants' Motions should be denied in their entirety.

Dated: April 9, 2009                                            Respectfully submitted,

/s/ William J. Howard
Bar No. 25381
Howard & Marcus
4316 Hamilton Street
Hyattsville, MD 20781
(301) 864-6700

## CERTIFICATE OF SERVICE

      I, William Howard, an attorney, state that I caused the foregoing document to be served upon all counsel of record via electronic delivery by CM/ECF on this the 9th date of April, 2009.

Dated:  April 9, 2009                           /s/ William J. Howard
                                                            Bar No. 25381
                                                            Howard & Marcus
                                                            4316 Hamilton Street
                                                            Hyattsville, MD 20781
                                                            (301) 864-6700