IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| DAVID WALSH, | * | |
| Plaintiff, | * | |
| v. | * | Civil No. 08 CV1897 DKC |
| WILLIAM MITCHELL, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**DEFENDANTS WILLIAM MITCHELL AND DONNA MITCHELL'S REPLY
TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendants, William Mitchell and Donna Mitchell, by and through their undersigned counsel, hereby file the instant Reply to Plaintiff's Response to Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint (hereinafter *Response*) and, incorporating by reference all arguments contained within the Motion to Dismiss Plaintiff's Amended Complaint, state as follows:

**I.   WALSH'S AMENDED COMPLAINT FAILS TO ALLEGE A SUFFICIENT FACTUAL BASIS FOR THE ALLEGED RICO PREDICATE ACTS SOUNDING UNDER 18 U.S.C. §§ 2312 AND 2313.**

Walsh, in support of his RICO claim, relies almost exclusively[1] on allegations that Mitchell violated the Dyer Act[2] by engaging in the interstate transportation of stolen vehicles. *Am. Complaint* at

---

[1] Walsh's Amended Complaint also alleges wire fraud, although he admits, at least inferentially, that the predicate acts of wire fraud are subject to the strict pleadings requirements of Fed. R. Civ. Proc. 9(b). *Response* at 10, n.15. As explained in Defendants' Motion, the allegations of wire fraud in this case fail to meet the requirements set forth under Rule 9(b). *See Motion* at 4, n.2.

[2] The Dyer Act is codified under 18 U.S.C. § 2311 *et seq.*, and generally prohibits the interstate transportation of stolen goods. Sections 2312 and 2313, however, specifically address crimes involving vehicles. Mitchell, for ease of reference, refers to 18 U.S.C. §§ 2312 and 2313 as the "Dyer Act" throughout the remainder of this Reply.

¶¶ 18-22. Walsh claims that the vehicles were stolen because Mitchell either deprived Walsh of the money obtained from the resale of these vehicles or because the vehicles were never returned to Walsh. *Id.* at ¶20. Walsh, however, puts the figurative cart before the horse when alleging that he was deprived of his interest in more than 40 vehicles allegedly purchased in accordance with the "partnership agreement" between Walsh and Mitchell.

Walsh focuses on the wrong issue by repeatedly imploring this Court to look to the breadth of the Dyer Act, and not to the facts giving rise to its very applicability. The Mitchells admit that the Dyer Act is expansive, and that it covers nearly all forms of felonious takings; however, the Dyer Act is not completely and utterly divorced from concepts of legal ownership. *U.S. v. Turley*, 352 U.S. 407, 417 (1957), explained that "stolen," as used in the Dyer Act, includes all felonious takings of vehicles that occur with the intent to "deprive the owner of the rights and benefits of ownership."

Therefore, applicability of the Dyer Act cannot be considered in a vacuum without considering whether the plaintiff properly alleged interference with a legally recognized property interest in the allegedly stolen property. *See e.g., U.S. v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir. 1978); *U.S. v. Brandon*, 651 F.Supp. 323 (W.D.Va. 1987); *Motion* at 11. Thus, Walsh's alleged RICO predicate acts sounding under the Dyer Act cannot stand unless he alleges sufficient facts to establish an ownership interest in the vehicles at issue.

> A. **The cases cited by Walsh in support of his claim that the Mitchells violated 18 U.S.C. §§ 2312 and 2313 are not helpful in resolving the question pending before this Court, i.e., whether the alleged facts establish that Walsh acquired a legally cognizable ownership or possessory interest in the vehicles at issue.**
>
> > 1. **Walsh misconstrues the thrust of the Mitchells argument regarding the applicability of the Dyer Act.**

Mistakenly, Walsh first appears to contend that the Mitchells argument regarding his failure to allege facts sufficient to support the existence of a Dyer Act violation would be moot had the Amended

Complaint simply invoked the talismanic properties of the term "own." *Response* at 4-5. This, however, is not the Mitchells argument.

The Mitchells do not attack Walsh's mere failure to utilize the term "owned" in his Amended Complaint. Ownership is a legal conclusion. *See Manning v. State Farm Mut. Auto Ins. Co.*, 243 F. Supp. 619, 623 (W.D.N.C. 1965 ) ("Ownership is not so much a fact as a legal conclusion -- at most a mixed question of law and fact."). This court need not accept alleged legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986). Accordingly, it is unimportant how Walsh characterizes his claims; what matters is whether the alleged *facts* sufficiently support Walsh's claim of ownership.

> **2. The Amended Complaint's description of the transaction giving rise to the instant action demonstrates that Walsh did not acquire any vehicles from Copart (or other vendors), and therefore it cannot reasonably be inferred that Walsh owned the cars.**

Next, Walsh asserts that his ownership interest in the vehicles should be inferred by this Court, as he repeatedly alleged in his Amended Complaint that he "purchased the cars at issue and that they were his cars." *Response at 5* (emphasis omitted). This Court, however, need not accept any unwarranted deductions of fact or unreasonable inferences. *See Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002). Here, the circumstances underlying the acquisition of the vehicles make clear that, despite his claims to the contrary, Walsh did not obtain an ownership interest in the vehicles.

Walsh cites the definition of the term "purchase" provided under the Maryland Code and emphasizes that it includes "taking by sale" and "any other voluntary transaction creating an interest in property." *Response* at 5 (quoting *Md. Code Ann.*, *Comm. Law*, § 1-201(32)). The Code further defines what constitutes a sale: "A 'sale' consists in the passing of title from the seller to the buyer for a price (§ 2-401)." *Md. Code Ann., Comm. Law,* § 2-106 (2008).

Walsh's Amended Complaint does not allege facts sufficient to establish that he "took by sale." The Amended Complaint makes clear that the vehicles were purchased from Copart (and other vendors). *Am. Complaint* at ¶ 13.  Walsh also alleges that all financial transactions occurred when he transferred funds into Mitchell's personal banking account and Mitchell's Copart corporate account and through Mitchell charging Walsh's credit card.  *Am. Complaint* at ¶ 14.  Walsh's payments into Mitchell's accounts do not qualify as a "purchase" of the vehicles from the seller, Copart.  Therefore, given the structure of the transactions, it is not proper to infer that Walsh purchased the vehicles.

### 3. Walsh's claimed interest in the profits from the resale of the vehicles is not the same as an ownership or possessory interest in the vehicle itself.

Attempting to cloud the ownership issue, Walsh claims that "he need not have complete and total ownership of [the] vehicles to state a claim here for stolen vehicles." *Response* at 6.  Walsh then claims that the Amended Complaint alleged a financial interest in the 40 cars because, under the partnership agreement, Walsh "ha[d] the legal right and benefit of receiving the profits from the resale of the vehicles." *Id.*  Walsh cites no cases, however, that equate a right to receive the profits from the resale of a vehicle with the ownership interests sufficient to trigger liability under the Dyer Act.  The Dyer Act applies to the theft of vehicles, not the theft of profits associated with the sale of vehicles.  Walsh simply ignores this important distinction.

Walsh attempts to draw support for his position by citation to two inapposite cases: *Turley*, 352 U.S. 407 (1957), and *United States v. Bunch*, 542 F.2d 629, 630 (4th Cir. 1976) (*per curium*).  *Turley*, the seminal case interpreting the scope of the Dyer Act, involved a defendant who, having received possession of a vehicle from the undisputed owner, converted the vehicle to his own use.  *Id.* Accordingly, the issue resolved by the Court centered not on concepts of "ownership," but rather on issues relating to whether the Dyer Act's use of the term "stolen" encompassed embezzlement as well as

larceny. *Id.* While standing for the proposition that the Dyer Act reaches all types of theft, *Turley* simply did not address the concerns of ownership relevant to the inquiry *sub judice*. *Id.*

Likewise, *Bunch* reviewed the propriety of a defendant's conviction under the Dyer act where the "victim," a bank, held only a security interest in a vehicle. Affirming Bunch's convictions "on the basis of the district court's opinion," the Fourth Circuit held that, "Bunch deprived the bank of significant property interests, *tantamount to ownership*, which it held in the car." 542 F.2d at 630 (emphasis added). The rationale of the lower court in *Bunch*, however, made clear that a relevant consideration was the Bank's immediate right to assert full ownership rights over the vehicle at the time of the theft. *See U.S. v. Bunch*, 399 F. Supp. 1156, 1160-61 (D.Md. 1975). The District Court explicitly stated that the bank's security interest matured into a right to "assert *full 'ownership'* interest in the [vehicle]" when, at the latest, physical possession of the vehicle was transferred to the defendant with the understanding that he would dispose of the vehicle. *Id.* at 1161.

Unlike the victim in *Bunch*, Walsh's Amended Complaint provides no basis to infer a right to possess the vehicle under the alleged terms of the partnership agreements. As alleged, the partnership agreements set forth only that the parties agreed to purchase vehicles, repair them, and then resell them for a profit. *Am. Complaint* at 13. The Amended Complaint contains no allegations with respect to how the vehicles were to be titled. Moreover, the allegations do not state that the partnership agreements gave Walsh any possessory rights with respect to the vehicles. Thus, Walsh cannot point to any contractual language providing him with any right to "assert full ownership" of the vehicles found in *Bunch*.

Walsh also offers *U.S. v. Hull*, 437 F.2d 1 (5th Cir. 1971), and *Schwab v. U.S.*, 327 F.2d 11 (8th Cir. 1964), in support of his position that the Dyer Act does not depend on technical property concepts.

In *Hull*, the defendant claimed that the Government failed to meet its burden because it failed to introduce evidence that the victim owned the vehicle in question. *Hull*, 437 F.2d at 5. However, *Hull* explained that the "record clearly shows that the vehicle was *originally in the legal possession*" of the victim. *Id.* Moreover, the Court explained that, at trial, the parties did not dispute the victim's claim of ownership. Importantly, the Court also stated that Hull's execution of a "formal written lease agreement" and his "deposit of $100.00," made any claim that the victim lacked an interest in the vehicle untenable on appeal. *Id.* Thus, while *Hull* noted that the Dyer Act does not depend on technical property concepts, it did not hold that the Dyer Act exists wholly independent of such property concepts.

Indeed, "[e]ven under the broad definition in *Turley*, stealing is still essentially an offense against another person's proprietary or possessory interests in property." *Long Cove Seafood, Inc.*, 582 F.2d at 163); *accord United States v. Carman*, 577 F.2d 556, 565 (9th Cir. 1978) ("the 'stealing,' 'conversion,' or 'taking' must be from one having the attributes of an owner.").

Walsh contends that Mitchell's acquisition of the vehicles through legal means is not a defense to the Dyer Act, as the Act covers larceny by trick, embezzlement, and other theft-like crimes. *Response* at 8. In each of the cases cited by Walsh, however, the "victim" was dispossessed of an undisputed ownership interest by a thief possessing the intent to deprive the owner of the vehicle at sometime prior to the interstate transportation of the vehicle. *See U.S. v. Welborn,* 322 F.2d 910 (4th Cir. 1963) (Defendant rented vehicle from rental agency and failed to return it); *U.S. v. Mancuso*, 423 F.2d 23, 28 (5th Cir. 1970) (Defendant purchased vehicle from its owner using a bad check); *Landwehr v. U.S.*, 304 F.2d 217 (8th Cir. 1962) (Defendant purchased vehicle from its owner using a bad check); *Tandberg – Hanssen v. U.S.*, 284 F.2d 331 (10th Cir. 1960) (Defendant failed to return vehicle to rental agency). Such cases shed no light on the issue presented – i.e., whether Walsh's Amended Complaint alleges

sufficient facts to establish an ownership or possessory interest in the vehicles. In each of the cases cited by Walsh, the evidence clearly established that the victim owned or possessed the vehicle at issue at the time it was stolen. Here, however, the Amended Complaint fails to allege sufficient facts to support Walsh's claim of ownership in the vehicles.

Additionally, to the extent Walsh attempts to rely on the alleged partnership agreement to establish his interest in the property, he is mistaken. Maryland law is clear that that "partnership property is property of the partnership and not of the partners individually." Md. Code Ann., Corp. & Assoc., § 9A-203; *See also*, Md. Code Ann., Corp. & Assoc., § 9A-501 ("A partner is not a co-owner of partnership property and has no interest in partnership property which can be transferred, either voluntarily or involuntarily."). Consequently, the partnership agreement gives Walsh no right to claim ownership or interest in the vehicles themselves, as they were, at the most, assets of the partnership.

### 4. Walsh's allegations, if true, establish that the theft was complete prior to the acquisition of any vehicles.

Theft, under federal law, is "complete as soon as a person exerts unauthorized control over property of another with the purpose of converting the property to his own use." *United States v. Brookins*, 52 F.3d 615, 620 (7th Cir. 1995) (internal quotations omitted) (interpreting 18 U.S.C. § 659).

In this case, Walsh alleges that Mitchell intended to steal from Walsh when he entered into the partnership agreements and at all other relevant times. *Am. Complaint* at ¶16, 22. Walsh further alleges that Mitchell's scheme to steal from Walsh involved making misrepresentations regarding the nature of the proposed business arrangements. *Am. Complaint* at ¶14. Walsh then claims that Mitchell's misrepresentations "caused Walsh to finance the[] vehicle acquisitions by, *inter alia*, wire transferring cash into Mitchell's personal checking account, wire transferring cash into Mitchell's Copart's business account (located in California), and/or by charging Walsh's credit card." *Id.*

In sum, Walsh alleges that Mitchell made misrepresentations that caused him to transfer money into Mitchell's various accounts. Assuming the truth of Walsh's allegations, any theft would be complete immediately upon the acquisition of Walsh's funds by Mitchell. Accordingly, Walsh's allegations, if true, establish that Mitchell stole Walsh's money, but not his cars. *United States v. Bell*, aptly explained:

> [f]or example, a defendant may steal cash from a third party, deposit it with a bank, and later withdraw it. He does not withdraw it with the intent to steal from the bank because he has already stolen the money from the third party; the theft is complete. In withdrawing the cash, the defendant views it as his own, at least vis-a-vis the bank.

649 F.2d 281, 283 (5th Cir. 1981).

By analogy, the Amended Complaint alleges that Mitchell obtained Walsh's money (in the form of transfers from Walsh to Mitchell's Bank Account and Mitchell's Copart Account) based upon misrepresentations regarding the parties' business arrangements. At the time of Walsh's transfer, however, it is alleged that Mitchell had an intent to deprive Walsh of his property. Consequently, when Walsh deposited funds in Mitchell's accounts, the theft was complete. Accordingly, Walsh's Amended Complaint fails to state a claim under the Dyer Act because the theft, as alleged, was complete prior to the acquisition of the vehicles.

**B.   There can be no violation of 18 U.S.C. § 1962(d) when the Complaint fails to allege an agreement that is itself a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of a minimum of two predicate acts.**

Walsh claims that this Court should not dismiss Count II of the Amended Complaint, which alleges a violation of 18 U.S.C. § 1962(d). *Response* at 14. However, "[t]o establish a violation of section 1962(d), Plaintiff[] must allege either an agreement that is a substantive violation of RICO or that the defendants agreed to commit, or participated in, a violation of two predicate offenses." *Howard v. America Online, Inc.*, 208 F.3d 741 (9th Cir. 2000). Thus, "[i]f a substantive violation is properly

pleaded, a conspiracy claim may survive a factfinder's conclusion that there is not sufficient evidence to prove the violation." *Id.* If, however, "the section 1962(c) claim does not state an action upon which relief could *ever* be granted, regardless of the evidence, then the section 1962(d) claim cannot be entertained." *Id.*

As explained above, Walsh has failed to allege the existence of the requisite predicate acts to sustain his RICO claim, as his allegations sounding under the Dyer Act are insufficient as a matter of law. *See Id.* ("Even if Plaintiffs properly claimed that the defendants agreed to be a part of an enterprise, the failure to allege substantive violations precludes their claim that there was a conspiracy to violate RICO.") Accordingly, because the substantive RICO claim fails as a matter of law, this Court should not entertain Count II of Plaintiff's Amended Complaint.

## II. ABSENT AN OWNERSHIP OR POSSESSORY INTEREST IN THE VEHICLES, WALSH'S CONVERSION CLAIM LIKEWISE FAILS.

Walsh claims that this Court should not dismiss Count III of the Complaint because the Amended Complaint alleges that he purchased the vehicles in question and the Mitchells, without justification, retained the vehicles and failed to produce title. *Response* at 15. Yet, as explained above, Walsh's claim that he "purchased" the vehicles is belied by the allegations regarding the circumstances of the transactions he described in his Amended Complaint. Thus, Walsh's allegations, even if true, fail to establish his right to immediate possession of the vehicles in question.

The failure to establish a right to immediate possession is fatal to Walsh's conversion claim. *See Froelich v. Erickson*, 96 F.Supp. 2d 507, 526 (D. Md. 2000); *U.S. v. Aurora*, 860 F.Supp. 1091, 1097 (D. Md. 1994); *Keys v. Chrysler Credit Corp.*, 303 Md. 397 (1985).

## III. ALTHOUGH BREACH OF FIDUCIARY DUTY MAY BE A COMPONENT OF A CAUSE OF ACTION, IT IS NOT A STANDALONE CLAIM.

Relying on *Insurance Co. of N. Am. V. Miller*, 362 Md. 361, 379, 765 A.2d 587 (2001) and *Garcia v. Foulger Pratt Development, Inc.*, 155 Md. App. 634, 682-83, 845 A.2d 16 (2003), Walsh claims that Maryland recognizes an independent tort for breach of fiduciary duty. Walsh, however, ignores the clarification of *Miller* offered by the Court of Appeals one year after its decision. In *International Brotherhood of Teamsters v. Willis Corroon Corp. of Maryland*, the Court of Appeals clarified *Miller* by footnote, opining:

> although the breach of a fiduciary duty may give rise to one or more causes of action, in tort or in contract, Maryland does not recognize a separate tort action for breach of fiduciary duty. Based on the underlying averments, IBT may have been able to plead an action for breach of contract, in addition to its claim for negligence, but it chose not to do so. We shall treat the complaint as one for negligence.

369 Md. 724,728 n.1,  802 A.2d 1050, 1052 n.1 (2002).

*Vinogradova v. Suntrust Bank, Inc.*, 162 Md. App. 495, 509-10, 875 A.2d 222, 231 (2005), most recently addressed a plaintiff's claim that "*Kann v. Kann*, 344 Md. 689, 690 A.2d 509 (1997), … did not eliminate entirely in Maryland an independent cause of action for breach of fiduciary duty." *Id.* (Internal quotations omitted). Rejecting the plaintiff's argument, *Vinogradova* stated, "[t]he Court's clarification of its *Kann* holding in *International Brotherhood of Teamsters* … however, refutes her interpretation of *Kann*." *Id.* (internal citation omitted). *Vinogradova* therefore held that a plaintiff's separate claims sounding in negligence (count one) and breach of fiduciary duty (count two) condensed into only a single claim based on the tort of negligence, as Maryland did not recognize the independent tort of breach of fiduciary duty.

Moreover, Walsh's allegations relating to his claim for breach of fiduciary duty are no different in substance to the allegations contained in the Complaint at issue in *Vinogradova*.

| 25. SUNTRUST and RIETVELD, as brokers, investment advisors and/or account | 65.   As detailed above, the Mitchells and Walsh entered into a partnership for the sale of |
|---|---|

- 10 -

| | |
|---|---|
| representative for YELENA, each owed YELENA fiduciary duties. These duties are heightened where, as is the case here, YELENA is unsophisticated in financial matters, and is dependent upon others to translate and interpret documents and financial information, all facts that were known or should have been known to SUNTRUST and RIETVELD.<br><br>26. SUNTRUST and RIETVELD breached their fiduciary obligations to YELENA by failing to advise her of the very suspicious activity in her accounts and failing to relay their concerns over BESSON's conduct.<br><br>*Vinogradova*, 162 Md. App. at 510, n.9, 875 A.2d at 230, n.9. | used cars. Pursuant to the Maryland Revised Uniform Partnership Act, Title 9A-101 *et. seq.*, the Mitchells and Walsh owed a fiduciary duty to one another.<br><br>66.  By stealing the vehicles, failing to account for the vehicles' sales, location and/or transportation, and by deliberately impeding Walsh's ability to account for said actions, as detailed above, the Mitchells violated their fiduciary duty to Walsh.<br><br>*Am. Complaint* at ¶¶ 65-66. |

*Vinogradova*, as the most recent pronouncement of Maryland law on the existence of an independent tort of Breach of Fiduciary Duty is pellucid in its holding – a cause of action for breach of fiduciary duty is viable only in the context of an underlying breach of contract or negligence action. Prior to *Vinogradova*, this Court had reached the same conclusion. *See Swedish Civil Aviation Admin. v. Project Management Enterprises, Inc.,* 190 F. Supp. 2d 785, 801 (D. Md. 2002) ("[T]here is no independent tort for breach of fiduciary duty in Maryland, especially in light of the multiple alternative remedies involving the alleged breach available."); *Kerby v. Mortgage Funding Corp.,* 992 F. Supp. 787, 803 (D. Md. 1998) ("Maryland recognizes no universal or omnibus tort for the redress of breach of fiduciary duty, at least in a situation where other remedies exist. . . .") (internal quotations omitted).

While Mitchell recognizes the *Miller's* language could lead to confusion, a careful reading of the subsequent cases makes clear that Maryland does not recognize a standalone tort for breach of fiduciary duty.  Thus, while an alleged breach of fiduciary duty may be a component of an action for damages, it is not a self-supporting cause of action unto itself.  This interpretation of *Miller* is in accordance with the

Court of Appeals subsequent pronouncement in *International Brotherhood of Teamsters*, the Court of Special Appeals' holding in *Vinogradova*, and this Court's holding in *Seedish Civil Aviation Admin*. Thus, Count V should be dismissed.

IV. **WALSH'S CLAIM THAT DONNA MITCHELL WAS A PARTY TO THE CONTRACT, DESPITE THE AMENDED COMPLAINT'S FAILURE TO INCLUDE HER AS A PARTY WHEN INITIALLY DESCRIBING THE PARTIES AND TERMS OF THE AGREEMENTS, SHOULD NOT BE ALLOWED.**

In Counts IV and V, Walsh attempts to allege that Donna Mitchell is liable for breach of contract and breach of fiduciary duty. In Count IV, Walsh claims, "[a]s described in paragraph 13, Walsh entered into a contract with the Mitchells by which Walsh purchased automobiles and automobile parts for resale in the retail and wholesale market." *Am. Complaint* at ¶ 60. The referenced paragraph, however, alleges a contract between only Walsh and Mitchell. *Am. Complaint* at ¶13. To cure the deficiency, Walsh resorts to the nonsensical position that Paragraph 13 of the Amended Complaint did not claim that Mr. Mitchell was the only party to the contract. *Response* at 16. Thus, Walsh now claims that Paragraph 60's reference to Paragraph 13 was only to specifically "identify that Donna Mitchell was also a party to that very same agreement."[3] *Id.* (emphasis omitted).

Of course, such an interpretation seems inconsistent with the terms of the agreement as pled by Walsh. Indeed, the Amended Complaint's description of the partnership agreements fail to establish what Donna Mitchell's role was under the contract. Specifically, the Amended Complaint provided that Walsh was to purchase vehicles from Copart, Mr. Mitchell was to transport the vehicles, Mr. Mitchell was repair the vehicles, and then Mr. Mitchell and Walsh would resell the vehicles. *Am. Complaint* at ¶13. The Complaint also explains that Walsh and Mr. Mitchell, not Donna Mitchell, were to split the

---

[3] Notably, Paragraph 13 indicates the existence of "two partnership agreements," while Paragraph 60 speaks in terms of a single contract.

profits equally. *Id.* Consequently, asking this Court to read Paragraph 13, which describes the relevant agreements, as not excluding Donna Mitchell as a party makes little sense and should be rejected.

## CONCLUSION

For the foregoing reasons, and for the reasons contained in Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, Defendants request that this Court enter an Order dismissing Counts One, Two, Three, Four, Five, and Six of Plaintiff's First Amended Complaint .

Respectfully submitted,

April 23, 2009
           /s/
Byron L. Warnken (Bar No.: 23419)
James M. Nichols  (Bar No.: 28779)
Warnken LLC
300 East Joppa Road, Suite 303
Towson, MD 21286
443-921-1100
443-921-1111 (facsimile)

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of April 2009, a copy of the foregoing Reply to Plaintiffs Response to Defendant's Partial Motion to Dismiss Plaintiff's First Amended Complaint were delivered by electronic means (CM/ECF) upon all counsel of record.

           /s/
Byron L. Warnken