<u>UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND</u>

**(SOUTHERN DIVISION)**

DAVID WALSH,                              *

        Plaintiff,                    *

v.                                        *        Case No.: DKC-08-CV-1897

WILLIAM MITCHELL, et al,                  *

        Defendants.                  *

**MEMORANDUM OF LAW IN
SUPPORT OF  MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Defendant, John Jelich (hereinafter "Defendant" or "Jelich"), by undersigned counsel, has moved for dismissal the Second Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and in support thereof states:

**INTRODUCTION**

On October 6, 2009,  Plaintiff, David Walsh (Walsh), filed his Second Amended Complaint in this matter after his First Amended Complaint was dismissed by this Court on September 22, 2009, with leave to amend in fourteen (14) days. Unfortunately for the Plaintiff, his  Second Amended Complaint in this action still fails to transform this ordinary, garden-variety business/contractual dispute into the more sinister, and lucrative civil RICO action he desires.  Notwithstanding Walsh's allegations, this case presents a simple business/contractual dispute between Walsh and William Mitchell that should be resolved on the basis of the underlying state law as all but two of Walsh's claims sound under State law.  However, evidently believing that no business dispute is complete without invocation of RICO's extraordinary damages

provisions, Walsh attempts to mire this simple case in allegations of criminal misconduct.

The core assertions within Walsh's Second Amended Complaint consist of alleged activity of limited duration, relating to a single victim, that may – if his allegations were true – at most constitute a simple action for breach of contract between himself and William Mitchell. However, in an apparent acknowledgment of the shortcomings of his First Amended Complaint, Walsh has metamorphosed his prior allegations of a February 22, 2006 partnership between himself and William Mitchell into a "contractual" relationship within his Second Amended Complaint in the hope it will bolster his allegations that William Mitchell and the other defendants committed the necessary predicate acts to sustain the viability of Walsh's imaginative, yet still equally frivolous, RICO claims.

Although the Second Amended Complaint attempts to correct the glaring defects, inconsistencies, and mistakes contained within the First Amended Complaint, this Court should see Walsh's exaggerated pleading for what it is, a simple State-law business/contractual dispute mis-characterized as a federal criminal conspiracy. In sum, the RICO Counts should be dismissed by this Court and the remainder of the case should be remanded to State court for adjudication.

## LEGAL STANDARD

A Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) serves to test the legal sufficiency of the complaint. *Hall v. Virginia*, 385 F.3d 421, 427 (4th Cir. 2004). In considering a motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *De Sole v. United States*, 947 F.2d 1169, 1171 (4th Cir. 1991). However, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), declared that the "plaintiff's obligation to provide grounds for his entitlement

to relief requires more than labels and conclusions, and formalistic recitation of the elements of a cause of action will not do." *Id.* at 555. Simply stated, "factual allegations must be enough to raise a right to relief above a speculative level." *Id.*

Consequently, the Court need not accept as true "a legal conclusion couched as a factual allegation," *Papasan v. Allain*, 478 U.S. 265, 286 (1986), conclusory allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979), or "allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences." *Veney v. Wyche*, 293 F.3d 726 (4th Cir. 2002). Accordingly, "a complaint may be dismissed if the law does not support the conclusions argued, or where the facts alleged are not sufficient to support the claim presented." *Mylan Labratories, Inc. v. Akzo, N.V.* 770 F. Supp. 1053, 1059 (D.Md. 1991) (Ramsey, J.).

Under the standard of review, Walsh's claims prove to be deficient. Accordingly, because Walsh failed to plead facts that would entitle him relief, this Court should grant the instant Motion.

## ARGUMENT

**I.     THE SECOND AMENDED COMPLAINT FAILS TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED. [1]**

Generally, to establish a claim under RICO, a plaintiff must show: (1) a violation of the RICO statute, 18 U.S.C. § 1962; (2) an injury to business or property; and (3) that the injury was caused by the

---

[1]At the open motions hearing on September 22, 2009, Walsh admitted through counsel that he could not sustain his RICO claims based on allegations that Mitchell committed mail/wire fraud in violation of 18 U.S.C. § 1343.

violation of § 1962. *See Palmetto State Medical Ctr. v. Operation Lifeline*, 117 F.3d 142, 148 (4th Cir. 1997); *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 183 (2nd Cir. 2008).

RICO, and its attendant penalties, are reserved for only serious claims that fall outside the scope of normal business/contractual disputes because the conduct presents a continued threat to the public. "Congress contemplated that only a party engaging in widespread fraud would be subject to…" the serious consequences imposed by RICO. *Menasco, Inc. v. Wasserman*, 886 F.2d 681, 683 (4th Cir. 1989). (internal citation omitted). To avoid abuse by overeager plaintiffs, the Fourth Circuit takes a dim view of attempts to overinflate "garden-variety" business/contractual disputes into quasi-criminal RICO claims. *Flip Mortgage Corp. v. McElhone* explained:

> This circuit will not lightly permit ordinary business contract or fraud disputes to be transformed into federal RICO claims . . . A great many ordinary business disputes arising out of dishonest business practices or doubtful accounting methods, such as have until the present been redressed by state remedies, could be described as multiple instances of fraud, if one chose to do so. But to adopt such a mischaracterization would transform every such dispute into a cause of action under RICO.

841 F.2d 531, 538 (4th Cir. 1988) (internal quotes and citations omitted).

Accordingly, allegations of fraudulent conduct alone cannot justify the imposition of RICO's treble damages liability: "RICO treatment is reserved for conduct 'whose scope and persistence pose a special threat to social well-being.'" *GE Investment Private Placement Partners II v. Parker*, 247 F.3d 543, 551 (4th Cir. 2001) (quoting *Menasco*, 886 F.2d at 684). Consequently, this Circuit holds that RICO claims must fall "sufficiently outside the heartland of fraud cases to warrant RICO treatment." *GE Investment*, 247 F.3d at 551 (quoting *Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000)); *see also Al-Abood*, 217 F.3d

at 238 (courts must "preserve a distinction between ordinary or garden-variety fraud claims better prosecuted under state law and cases involving a more serious scope of activity"); *Menasco*, 886 F.2d at 683; *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074 (4th Cir. 1987) (holding that RICO's heightened penalties "are reserved for schemes whose scope and persistence set them above the routine").

To protect defendants from overzealous plaintiffs, this Circuit and others place special emphasis on the plaintiff's ability to plead a pattern of racketeering. The "pattern requirement … insure[s] that RICO's extraordinary remedy does not threaten the ordinary run of commercial transactions; that treble damage suits are not brought against isolated offenders for their harassment and settlement value; and that the multiple state and federal laws bearing on transactions such as this one are not eclipsed or preempted." *Menasco*, 886 F.2d at 683.

> a.    The "pattern of racketeering" component of RICO ensures that only extraordinary frauds of significant duration, scope, and impact are subjected to the enhanced penalties and provisions available under RICO.

This Circuit strictly views the RICO pattern requirement, and often utilizes the requirement as the principal means by which to differentiate ordinary fraud cases from the wide-reaching frauds of a criminal nature that pose the threat to social well-being for which RICO liability is appropriate. *See e.g. Park v. Jack's Food Sys., Inc.,* 907 F.Supp. 914, 919 (D. Md. 1995) (describing the Fourth Circuit's "strict view."); *Menasco*, 886 F.2d at 683. The first step in evaluating a plaintiff's RICO claim requires that the court determine whether the facts, if assumed true, constitute a legally cognizable pattern of racketeering activity. *See Menasco, Inc.*, 886 F.2d at 683.

At a minimum, a "pattern of racketeering" requires evidence of at least two acts of racketeering activity, one of which occurred after the effective date of the statute, and the last of which having occurred

within 10 years after the commission of the prior act of racketeering activity. *See* 18 U.S.C. § 1961(5). A pattern of racketeering activity is, therefore, comprised of a series of identifiable "predicate acts" that fall within the scope of 18 U.S.C. § 1961. However, "while two acts are necessary, they may not be sufficient." *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985). Rather, a pattern of racketeering requires a showing that the predicate acts are (1) related and (2) that "they amount to or pose a threat of continued criminal activity." *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989). *Sedima* counseled that, in analyzing the pattern requirement, a court must examine the relatedness and continuity of the alleged pattern of racketeering activities for "continuity plus relationship."

Acts are related if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events. *Id.* at 239-40. Indeed, *H.J. Inc.*, refined *Sedima*, explaining that predicate acts are "continuing" only if they constitute either an extended period of repeated conduct, or past conduct whose nature "projects into the future with a threat of repetition." *Id.*

"Continuity" is thus both a "closed-ended" and "open-ended" concept, referring either to a closed period of repeated conduct, or to past conduct that, by its nature, threatens repetition. *H.J. Inc.*, 492 U.S. at 241. Continuity, *H.J., Inc.*, opined:

> is in either case, centrally a temporal concept -- and particularly so in the RICO context, where *what* must be continuous, RICO's predicate acts or offenses, and the *relationship* these predicates must bear one to another, are distinct requirements.

*Id.* at 242. The Fourth Circuit has similarly explained:

> Continuity . . . refers "either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of *repetition*." [*H.J., Inc.*, 492 U.S. at 242]

-6-

(emphasis added). To satisfy the continuity element, a plaintiff must show that "the predicates themselves amount to, or . . . otherwise constitute a threat of, continuing racketeering activity." *Id.* at [240] (emphasis in original). Significantly, "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." Id. at [242]. . . . Thus, predicate acts must be part of a prolonged criminal endeavor.

*Menasco*, 886 F.2d at 683-84.

Consequently, "a party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* Predicate acts spanning only a short period fail to threaten the sort of threat of future criminal harm necessary to implicate the concerns Congress was concerned with when drafting RICO. When a RICO claim lacks the long-term, substantial period of conduct required of "closed-ended continuity," however, a claim may nevertheless exist if the facts demonstrate a significant threat of continued criminal conduct. *Id.*

"To determine if a fraudulent scheme rises to the level of a RICO violation," the Court must determine whether a pattern of racketeering exists by looking to the "scale, duration and number of victims" of the alleged scheme. *Al-Abood*, 327 F.3d at 238. In this case, when reviewing the various factors used to determine whether a claim falls "sufficiently outside the heartland" of State-law claims, it becomes clear that Walsh's Second Amended Complaint falls short in each area of inquiry. Walsh's allegations of wrongdoing, as included within the Second Amended Complaint, fail to establish the requisite threat of continued criminal conduct necessary to establish "open-ended" continuity and fall short of the long-term, substantial period of conduct required to establish "close-ended" continuity. In short, Walsh has alleged an insufficient basis upon which to find the requisite pattern of racketeering activity.

i.       **Walsh's reliance on 18 U.S.C. §§ 2312 and 2313 is misplaced, as he fails to allege sufficient facts to establish the vehicles at issue in this case were "stolen" within the meaning of the statute.**

Walsh's primary allegation of criminal wrongdoing in the Second Amended Complaint is that Mitchell committed 20 predicate acts involving the interstate transportation and storage of stolen vehicles in violation of 18 U.S.C. §§ 2312 and 2313. The statutes, which bar the interstate transportation of stolen vehicles, or storage of vehicles that had crossed an interstate boundary after being stolen, cover a wide range of criminal activity. The Supreme Court, in interpreting the term "stolen," has held that the statute includes "all felonious takings … with intent to deprive the owner of the rights and benefits of ownership, regardless of whether or not the theft constitutes common-law larceny." *United States v. Turley*, 352 U.S. 407, 417 (1957). Thus, the statute largely ignores any common law distinctions between larceny, embezzlement, false pretenses, and the distinctions between felonies and misdemeanors; however, the Federal statute cannot be interpreted in isolation, independent of the laws governing ownership and rights to possession.

Although the scope of the term "stolen," is expansive, the statute is not without limit. "Even under the broad definition in *Turley*, stealing is still essentially an offense against another person's proprietary or possessory interests in property." *U.S. v. Long Cove Seafood, Inc.*, 582 F.2d 159, 163 (2d Cir. 1978) (reviewing meaning of term "stolen" under *Turley*); *accord U.S. v. Brandon*, 651 F.Supp. 323 (W.D.Va. 1987). Accordingly, while property may be stolen from another who lacks good title, e.g., a thief stealing from a thief, "the question whether a particular item is 'stolen' cannot be decided in a vacuum, without considering whether there has been some sort of interference with a property interest." *Id.*

Consequently, federal law generally controls the question of whether an item is "stolen," and local law controls the analytically prior issues of (a) whether any person or entity has a property interest in the

item such that it can be stolen, and (b) whether the receiver of the item has a property interest in it. *See U.S. v. Portrait of Wally*, 105 F.Supp. 2d 288 (S.D.N.Y. 2000). In *United States v. McClain*, 545 F.2d 988 (5th Cir. 1977), for example, the defendants were charged under 18 U.S.C. § 2314, a statute similar to that at issue here, for conspiring to transport and receive pre-Colombian artifacts from Mexico. *Id.* at 992. The conviction was reversed because the jury needed to determine when the artifacts in that case were exported. *Id.* at 1003-04. If the exportation occurred at a certain time frame, under Mexican law "it could not have been owned by the Mexican government, and illegal exportation would not, therefore, subject the receiver of the article to the strictures of the National Stolen Property Act." *Id.* at 1003.

In this case, Walsh's allegations fail to establish that the vehicles were "stolen" within the meaning of the applicable statutes, as the facts alleged fail to establish an ownership or possessory interest. Under Maryland law, the plain meaning of the word 'owner' is "'[o]ne who has the right to possess, use, and convey something.'" *Floyd v. Mayor and City Council of Baltimore*, 407 Md. 461 (2009) (quoting in part Black's Law Dictionary 1136 (8th ed. 2004)). Paying money into Mitchell's Copart account, which is all Walsh has alleged, is an insufficient basis upon which to find that he had a right to possess, use, or convey the vehicles at issue. Walsh does not claim that the vehicles were titled in his name, or in the name of any entity in which he held an interest. Likewise, Walsh does not claim that he held a security interest in the vehicles. Instead, Walsh simply claims that he purchased the vehicles, by using and placing money in Mitchell's Copart account.[2]

---

[2] Section 15-101(b)(2) of Maryland's Transportation Articles includes within the definition of "Dealer" a person who is in the business of buying, selling, or exchanging vehicles, including a person who during any 12-month period offers to sell three or more of these vehicles, the ownership of which was acquired for resale purposes. Moreover, pursuant to § 15-302 of the

Indeed, under Walsh's theory, it is unclear as to what, if any, "ownership" or "property interest," in the vehicles Walsh had at the time of the alleged "theft." Despite Walsh's bald assertions that he acquired an ownership interest in and right to possession of the vehicles, all the alleged facts show is simply that Walsh advanced monies for the purchase of these vehicles through wire transfers into Mitchell's Copart account. *See* Sec. Am. Complaint at ¶¶ 15-22.

Because Walsh contends that Mitchell intended to steal these vehicles "at all relevant times during their relationship", any theft that occurred was completed upon the first acquisition of Walsh's property. *See* Sec. Am. Complaint at ¶ 23. Thus, under Walsh's facts, what has been alleged is not the theft of vehicles, but rather the theft of Walsh's money, as a theft is complete at the time the thief obtains possession of the victim's property while harboring the requisite intent to deprive. If, Mitchell obtained Walsh's money by way of its transfer into Mitchell's Copart account, while harboring such an intent, the theft was complete at that point and not, as Walsh wishes to contend, after those funds were subsequently applied to the purchase of a vehicle.

---

Transportation Article a person may not conduct the business of a dealer unless the person is licensed by the Motor Vehicle Administration.

Within his Second Amended Complaint Walsh alleges the existence of a contractual agreement with Mitchell concerning the purchase, transportation, repair, and re-sale of used vehicles damaged as a result of Hurricane Katrina. *See* Sec. Am. Complaint. Specifically, Walsh alleges that: (a) between February and June of 2006 he purchased approximately 20 vehicles, (b) Mitchell was Walsh's sales agent, and (c) Walsh's business was injured. *See* Sec. Am. Complaint at ¶¶ 16, 22, 68, & 105. Based on the aforementioned allegations, it is clear that Walsh's actions, as alleged, fall within the definition of a "dealer" under Maryland's Transportation Article and the contractual agreement between Mitchell and Walsh was nothing more than an elaborate scheme to keep Walsh from having to comply with the dealer licensing requirements in the State of Maryland as well as those other states where vehicles were allegedly purchased.

-10-

Theft, under federal law, is "complete as soon as a person exerts unauthorized control over property of another with the purpose of converting the property to his own use." *United States v. Brookins*, 52 F.3d 615, 620 (7th Cir. 1995) (internal quotations omitted) (interpreting 18 U.S.C. § 659).

In this case, Walsh alleges that Mitchell intended to steal from Walsh "at all relevant times during their relationship." *See* Sec. Am. Complaint at ¶ 23. This necessarily includes the time period when Walsh transferred money into Mitchell's Copart account. Accordingly, assuming the truth of Walsh's allegations, any theft would be complete immediately upon the acquisition of Walsh's funds by Mitchell. Thus, Walsh's allegations, if true, establish that Mitchell stole Walsh's money, but not his cars. *United States v. Bell*, aptly explained:

> [f]or example, a defendant may steal cash from a third party, deposit it with a bank, and later withdraw it. He does not withdraw it with the intent to steal from the bank because he has already stolen the money from the third party; the theft is complete. In withdrawing the cash, the defendant views it as his own, at least vis-a-vis the bank.

649 F.2d 281, 283 (5th Cir. 1981).

At the time Walsh transferred money into Mitchell's Copart account it is alleged that Mitchell had an intent to deprive Walsh of his property. Consequently, when Walsh deposited funds in Mitchell's accounts, the theft was complete. Accordingly, Walsh's Second Amended Complaint fails to state a claim under the Dyer Act because the theft, as alleged, was complete prior to the acquisition of the vehicles.

However, even if Walsh's Second Amended Complaint states a claim for the 20, albeit unspecified, violations of 18 U.S.C. §§ 2312 and 2313, this Court should nevertheless find that no legally cognizable "pattern of racketeering exists, as the "number of predicate acts is not an appropriate litmus test, as the perpetration of numerous acts of mail and wire fraud [, or interstate transportation of stolen vehicles,] 'may

be no indication of the requisite continuity of the underlying fraudulent scheme.'" *International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (quoting in part *Lipin Enterprises v. Lee*, 803 F.2d 322, 325 (7th Cir. 1986)). Rather, the inquiry is whether the alleged predicate acts establish the necessary "relatedness" and "continuity" that separate widespread fraud threatening long-term criminal activity from the types of ordinary fraud or other business disputes generally not within the ambit of RICO. *The Maryland-National Capital Park and Planning Comm'n v. Boyle*, 203 F. Supp.2d 468, 476 (D. Md. 2002) (noting Fourth Circuit's emphasis that "the heightened civil penalties of RICO are reserved for schemes whose scope and persistence set them above the routine'") (quoting *HMK Corp. v. Walsey*, 828 F.2d 1071, 1074) (4th Cir. 1987)).

> ii.   **A scheme to defraud a single victim fails to state a claim sounding in RICO and Walsh's attempts to bootstrap additional victims onto his claim should not be countenanced by this Court.**

In considering the scope of an alleged RICO scheme, the Fourth Circuit previously explained that, although there is no *per se* rule, a scheme involving but one victim generally fails to implicate the concerns underlying Civil RICO. *See Al-Abood*, 217 F.3d at 238-39; *Anderson*, 155 F.3d at 506 (holding that limited scheme to avoid paying compensation due under contract to single individual did not constitute a RICO violation); *Menasco*, 886 F.2d at 684-85 (holding that scheme to defraud only two victims did not constitute RICO violation but implying that claim alleging 27 victims of same scheme would suffice); *Flip Mortgage Corp.*, 841 F.2d at 538 (holding that fraudulent scheme occurring over several years but impacting only one victim did not constitute RICO violation).

In fact, when the scope or target of the alleged fraudulent scheme is sufficiently narrow, the Fourth Circuit expresses reluctance in finding a pattern of racketeering even if multiple victims are alleged. *See*

*International Data Bank v. Zepkin*, 812 F.2d 149, 155 (4th Cir. 1987) (holding that a single, limited fraudulent scheme, involving a misleading prospectus that went to ten investors, did not satisfy the RICO pattern requirement); *Eplus Tech. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002) (finding no pattern in fraudulent scheme and underlying conspiracy affecting "numerous creditors").

Initially, Walsh alleged the existence of only a single victim, himself.  In response the defendants' pre-answer motions to dismiss the original Complaint, Walsh, within both his First and Second Amended Complaints, has attempted to bootstrap support for his RICO action by citing alleged criminal conduct occurring years prior to the conduct at issue here.  Am. Complaint at ¶¶ 25-34. Sec. Am. Complaint at ¶¶ 41-50.  The additional RICO conduct that Walsh alleges, *viz.* the theft of a 1994 gold Honda and a 2000 Chevrolet Malibu, are unrelated acts, involving different purposes and victims, and as such they fail to meet the mandate that RICO predicate acts be "continuous and related" in order to constitute a pattern of racketeering activity. *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).  Simply stated, the "the target of RICO is not sporadic activity." *Zepkin*, 812 F.2d at 154 (quoting S.Rep. No. 617, 91st Cong., 1st Sess. 158 (1969)).

In this case, Walsh's primary allegation is that Mitchell concocted a scheme involving the acquisition of vehicles damaged in Hurricane Katrina, which were to be repaired and sold for profit. According to Walsh, the instant "scheme" allegedly began in January 2006, years after the other conduct. Indeed, as to the 1999 theft of the 1994 Gold Honda Accord, there appears to be no allegation that Mitchell's actions were related in any meaningful way, aside from Mitchell's alleged personal involvement, to the RICO enterprise underlying the instant claim. Morever, Jelich was not involved in the alleged theft of the 1994 Gold Honda Accord.  Additionally, the alleged acts of wrongdoing regarding Mitchell's and Jelich's

alleged involvement with a scheme involving a 2000 Malibu are likewise disconnected with the basis of the instant claim. The lack of any "clear and distinct relationship" between the acts that Walsh alleges "defeats a component necessary for liability under RICO, specifically that the acts were related to one another and formed the basis of a pattern of racketeering activity." *Davis v. Hudgins*, 896 F.Supp. 561, 568-69 (E.D. Va. 1995).

There is simply no information to connect the two prior incidents of alleged criminal wrongdoing to the alleged scheme to defraud Walsh. Moreover, a RICO pattern is not formed by sporadic activity, and temporal continuity is of primary importance. *See H.J. Inc.*, 492 U.S. at 239. Thus, Walsh's allegations of two singular events in 1999 and 2000, followed by approximately six years of no alleged wrongful activity fail to meet the "continuity plus relationship" elements needed for a pattern of racketeering activity. It is, of course, not the number of predicates that determined the validity of a pattern: it is the relationship that the acts bear to each other or to some external organizing principle that renders them ordered or arranged."

Certainly all three alleged schemes have a simple connection: they involve vehicles. One could parse out "relatedness" to the nth degree in an attempt to cobble together a connection between various distinct acts; however, as Justice Scalia warned,

> It hardly closes in on the target to know that "relatedness" refers to acts that are related by "purposes, results, participants, victims, . . . methods of commission, *or* [just in case that is not vague enough] *otherwise*." Is the fact that the victims of both predicate acts were women enough? Or that both acts had the purpose of enriching the defendant? Or that the different coparticipants of the defendant in both acts were his coemployees?

*H.J., Inc.*, 492 U.S. at 252 (J.Scalia, concurring). Thus, as the Fourth Circuit has noted, a conclusion that the pattern alleged is "the desire to obtain money or property by false or fraudulent pretenses is not enough

to distinguish [the] claim from an ordinary fraud claim better prosecuted under state law." *Anderson*, 155 F.3d 500, 506 (4th Cir. 1998) (internal citation omitted).

The only scheme that Walsh is able to allege is with respect to the fraud that he insists he experienced himself. It is obvious that the alleged acts of prior misconduct had nothing to do with the purchase and resale of vehicles damaged in Hurricane Katrina. Determining whether a pattern of racketeering exists is a "commonsensical, fact-specific inquiry," *Eplus Technology, Inc. v. Aboud*, 313 F.3d 166, 182 (4th Cir. 2002). The Fourth Circuit prescribes certain factors to take into consideration: "the number and variety of predicate acts and the length of time over which they were committed, the number of putative victims, the presence of separate schemes, the potential for multiple distinct injuries . . ." along with "all the facts and circumstances of the particular case – with special attention to the context in which the predicate acts occurred." *Brandenburg v. Seidel*, 859 F.2d 1179, 1185 (4th Cir. 1988), *overruled on other grounds by Quackenbush v. Allstate Ins. Co*., 517 U.S. 706 (1996). A scheme this narrow (only one victim) combined with the "commonplace predicate acts" that directly relate to the business/contractual arrangement underlying the action, simply fails to implicate the concerns Congress intended to address with RICO. *See, e.g., Al-Abood*, 217 F.3d at 238 (because of limited number of victims and ordinary nature of fraud, court considered acts within scope of customary fraud, not RICO, despite fact that scheme lasted years and plaintiffs lost several million dollars); *Anderson*, 155 F.3d at 506 (failure to pay two real estate commissions and another related scheme did not bear enough relationship to each other to support civil RICO claim); *Anderson*, 155 F.3d at 506 (holding that limited scheme to avoid paying compensation due under contract to single individual did not constitute a RICO violation); *Menasco*, 886 F.2d at 684-85 (holding that scheme to defraud only two victims did not constitute RICO violation but implying that claim

alleging 27 victims of same scheme would suffice); *Flip Mortgage Corp.*, 841 F.2d at 538 ) (holding that fraudulent scheme occurring over several years but impacting only one victim did not constitute RICO violation).

Here, Walsh's Second Amended Complaint continues to allege only a single victim of the racketeering activity, himself. The scheme alleged, moreover, has "a built-in ending point," as the scheme at issue terminated in this case when the business/contractual relations between Walsh and Mitchell ended. *See GE Investment*, 247 F.3d at 549. Walsh's attempts to broaden the scope of a one-off contract dispute between himself and Mitchell into a RICO claim are simply unfounded. While Walsh may argue that the 1999 and 2000 events demonstrate that auto theft constitutes the "regular way" of doing business, or that the racketeering may be ongoing, it is difficult to link the temporally remote conduct to the enterprise alleged. In fact, as to the 1999 events, Walsh alleges that only Mitchell was involved and fails to allege the critical element of knowledge. As to the 2000 event, it is clear that RICO was not intended to reach sporadic criminal conduct and, as such, Walsh's reliance on conduct occurring six years prior to the first agreement between himself and Mitchell is of limited impact at best.

Under the allegations in Walsh's Second Amended Complaint, it is clear that any alleged scheme was sufficiently narrow in scope to avoid implicating the type of widespread social ills RICO claims serve to correct. The limited scheme alleged involved an agreement between Walsh and Mitchell to acquire, repair, and resell vehicles damaged in Hurricane Katrina. Walsh was, according to the allegations, the only victim of that scheme. Thus, while *Al-Abood* hesitated in creating a *per se* rule, the Court nonetheless made clear that the existence of a single alleged victim weighs heavily against finding the sort of "widespread fraud" required to establish a pattern of racketeering activity. Quite simply, the existence of a single victim,

involved in a limited "scheme," fails to implicate the types of wide-reaching fraud required to qualify as a

pattern of racketeering.

### iii.   The scheme alleged by Walsh involves a single business transaction of short duration.

*H.J., Inc.*, *supra*, held that the requisite continuity for a pattern of racketeering in a close-ended

scheme may only be established by alleging "series of related predicates extending **over a substantial**

**period of time**." 492 U.S. at 242 (emphasis added). Indeed, as *Roger Whitmore's Auto. Servs. v. Lake*

*County, Ill,* 424 F.3d 659, 673 (7th Cir. 2005), noted, "[p]erhaps the most important element of RICO

continuity is its temporal aspect." Accordingly, another relevant factor in determining whether a pattern of

racketeering has been alleged is the time period during which the predicate acts are alleged to have taken

place. It is the period of time during which the alleged predicate acts are committed that is relevant. *See*

*Brandenburg*, 859 F.2d at 1185 (noting that a relevant inquiry is the "length of time over which they [the

predicate acts] were committed.").

While there is no bright line rule for what constitutes a "substantial period of time" in the context

of a civil RICO claim, *H.J., Inc.* explained that a period of a few weeks or months is too insubstantial to

allow for invocation of RICO's penalties in the absence of any threat of future criminal conduct. *See H.J.*

*Inc.*, 492 U.S. at 242. Indeed, in a close-ended scheme, such as the one alleged by Walsh, courts have been

reticent to find a "pattern" when the alleged conduct occurred for a period of less than 24 months. *See First*

*Capital Asset Magmt.*, *Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("while two years may be

the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two

years is insufficient, without more, to support a finding of closed-ended pattern"); *GICC Capital Corp. v.*

-17-

*Tech. Fin. Group, Inc.*, 67 F.3d 463, 467 (2d Cir. 1995); *Hartz v. Friedman*, 919 F.2d 469, 474 (7th Cir. 1990) (finding 18 months not substantial);  *Roger Whitmore's,* 424 F.3d at 673 (two years not substantial period).  The Third Circuit held that twelve months is not "a substantial amount of time" while noting that cases which did find a substantial period of time dealt with conduct "lasting *years*, sometimes over a decade."  *See Hughes v. Consol-Pennsylvania Coal Co.*, 945 F.2d 594, 611 (3rd Cir. 1991) (emphasis in original); *accord Vemco v. Camardella*, 23 F.3d 129, 135 (6th Cir. 1994) (seventeen months not sufficient to constitute "long-term criminal conduct").

In this Circuit, schemes from seventeen months to as long as twelve years have been found not to constitute a pattern of racketeering activity.  *See Parker*, 247 F.3d 543 (17 months); *Maryland-National Capital Park & Planning Comm'n v. Boyle*, 203 F.Supp.2d 468 (D.Md. 2002) (18 months); *Park*, 907 F.Supp. at 919 (18 months); *Flip Mortgage Corp.*, 841 F.2d 531 (10 years); *Al-Abood*, 217 F.3d 225 (12 years); *c.f.  Walk v. Baltimore & Ohio R.R.*, 890 F.2d 688, 689 (4th Cir. 1989) (recognizing that 10-year period of time is "substantial" in terms of continuity).  In *G.E. Inv. Private Placement Partners II v. Parker*, 247 F.3d 543, 550-51 (4th Cir. 2001), a case involving two years of fraudulent conduct, the court explained that the plaintiff's complaint, "[did] not present the type of persistent, long-term fraudulent conduct that the court faced in *Morley [v. Cohen*, 888 F.2d 1006 (4th Cir. 1989)] or in other cases addressing closed-ended continuity."

In this case, the predicate acts occurred for a limited period of time – the period during which Walsh and Mitchell conducted business together.  While Walsh wishes to rely on the temporally remote allegations involving supposed criminal wrongdoing in 1999 and 2000, RICO was not intended to apply to sporadic criminal activity.  Additionally, while all of the allegations involve vehicles, they do not involve the

-18-

relatedness RICO demands.  Walsh simply fails to allege facts demonstrating how the alleged misconduct, especially that alleged to have occurred in 1999 and 2000, are "interrelated by distinguishing characteristics and are not isolated events."  *See Anderson v. Foundation for Advancement, Education and Employment of American Indians*, 155 F.3d 500, 505 (4th Cir. 1998)

Moreover, although Walsh claims the RICO activity is ongoing, he offers no factual support for such a claim.  In fact, Walsh's bald allegation that the conduct is ongoing is contradicted by the dates regarding the specific instances of wrongdoing included in the initial Complaint, which Walsh has subsequently omitted from both his First and Second  Amended Complaints.  Consequently, the alleged acts of racketeering forming the basis of Walsh's Second Amended Complaint lack the "substantial time" requirement required for close-ended schemes such as the one alleged.  Thus, while the two-year period is not a bright line rule, "it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where, as here, the alleged activity focused almost exclusively on one business arrangement with a single individual.

**b.  Conclusion.**

In summary, Plaintiff fails to allege a pattern of racketeering activity sufficient to sustain his RICO claims.  In the words of Judge Smalkin, speaking in *Lowry's Reports, Inc. v. Legg Mason, Inc.*:

> Here, as in *Al-Abood* …, the scheme was narrowly focused, involving only one "target" (the plaintiff) and does not implicate any threat of organized criminal activity outside "the heartland of fraud cases" sufficient to justify handling under RICO.  More to the point, just as in *Menasco, supra*, the defendants' alleged actions were directed toward a single fraudulent goal, involving only one limited purpose, only one perpetrator, and only one victim.  This is no more than ordinary fraud; it is not RICO. *See Menasco*, 886 F.2d at 684-85; *see also Howard Oaks,* [810 F. Supp. 674]) (granting Rule 12(b)(6) dismissal of RICO

claim).  Finally, the durational element asserted in this case is insufficient, in light of the absence of other hallmarks of a valid RICO claim, to state a cause of action under recent Fourth Circuit law, especially *Al-Abood, supra*.  Although it is true that, in *Walk v. Baltimore & Ohio R.R.*, 890 F.2d 688 (4th Cir. 1989), and *Morley v. Cohen*, 888 F.2d 1006 (4th Cir. 1989), the Fourth Circuit found that RICO claims had been stated both in closed-end schemes and open-end schemes … on account of what appears solely to have been the duration of the scheme, such a purely durational approach is overly simplistic and outdated, in view of recent Fourth Circuit case law, especially *Al-Abood*, which took a more substantive approach to the issue as a whole, focusing on what is - and what is not - within the heartland of a simple fraud, executed, as most are, with the aid of the mails and wires.

186 F.Supp.2d 592, at 593-94 (D.Md. 2002) (citations for previously cited cases shortened)

## II.    COUNT II OF THE SECOND AMENDED COMPLAINT FAILS TO STATE A CLAIM UNDER 18 U.S.C. § 1962(d)

18 U.S.C. § 1962(d) provides that, "It shall be unlawful for  any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  Thus, the elements of a claim under § 1962(d) are: (1) knowledge of the general nature of the conspiracy; (2) an agreement by the defendant (a) to personally commit a violation of sections 1962(a)-(c); (b) to aid or abet a violation; or (c) that another co-conspirator commit a violation; and (3) injury caused by an act in furtherance of the conspiracy. *In re American Honda Motor Co., Inc. Dealerships Relations Litigation,* 941 F.Supp. 528, 560 (D.Md. 1996) (*citing United States v. Pryba*, 900 F.2d 748, 760 (4th Cir. 1990)).  General principles of conspiracy apply, and proof of an overt act is not required, *Salinas v. United States*, 522 U.S. 52, 62 (1997), however, allegations of conspiracy must be pled with particularity.  *See Fed. Deposit Ins. Co. v. Kerr*, 637 F.Supp. 828, 834 (W.D.S.C. 1986).

An injury caused by an overt act that is not an act of racketeering or otherwise wrongful under RICO is not sufficient to give rise to a cause of action under § 1964(d).  *See Bridge v. Phoenix Bond & Indemnity*

*Co.*, 128 S.Ct. 2131, 2140 (2008) (*quoting Beck v. Prupis*, 529 U.S. 494, 505 (2000)).  As discussed above, the acts alleged by Walsh do not constitute wrongful acts under RICO because the alleged acts do not qualify as predicate offenses.  Moreover, because Walsh has not stated a claim under § 1964(c), or one of the other substantive provisions of RICO, the conspiracy claim necessarily fails.  *GE Investment*, 247 F.3d at 551 n.2 (*citing Efron v. Embassy Suites (Puerto Rico), Inc*., 223 F.3d 12, 21 (1st Cir. 2000)).

Therefore, the conspiracy count of the complaint should be dismissed.

### III.     THIS COURT SHOULD DECLINE TO EXERCISE ITS SUPPLEMENTAL JURISDICTION OVER THE STATE-LAW COUNTS OF THE SECOND AMENDED COMPLAINT.

The sole basis for this Court's original jurisdiction over this matter are the federal RICO claims presented in Counts One and Two of the First Amended Complaint.  The remaining counts against all defendants arise out of and are solely concerned with Maryland law.  Therefore, this Court's authority to hear the remaining counts arises from the supplemental jurisdiction afforded under 28 U.S.C. § 1367(a).

This Court may decline to exercise its supplemental jurisdiction over State-law claims if this Court "has dismissed all claims over which it has original jurisdiction."  Absent exceptional circumstances, this Court should remand this matter to State Court for final adjudication on the merits.  *See Lust v. Burke*, 876 F. Supp. 1474, 1484 (D. Md. 1994) (Harvey, J.).

As explained above, this case involves allegations arising from a commonplace business dispute between two parties and, as such, it is best left to resolution by State courts.  There are no "exceptional circumstances" in this case and, accordingly, John Jelich respectfully submits that the remaining claims be remanded to State court for continued adjudication.

-21-

**REQUEST FOR HEARING**

Defendant John Jelich respectfully requests a hearing in this matter.


MENG & ALPERT, LLC

_____/s/_____
George A. Bealefeld, III (Bar No. 27207)
14507 Main Street,
 P.O. Box 549
Upper Marlboro, Maryland 20773
(Telephone) 301-627-1600
(Facsimile) 301-627-2838
gb@chesapeake.net


**CERTIFICATE OF SERVICE**

This is to certify that on this 19th day of October, 2009, one copy of this Memorandum of Law in

Support of Motion to Dismiss Second Amended Complaint was sent via the electronic filing system to all

counsel of record and via regular mail, postage prepaid, to: Dennis Rogers, 8321 Stanwood Street, New

Carrolton, Maryland 20748, William Mitchell & Donna Mitchell, 23372 Hurry Road, Avenue, Maryland

20609, and Amy Sims, P.O. Box 444, Chaptico, Maryland 20621.


_____/s/_____
George A. Bealefeld, III